Kenneth Charles Porter v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-150-CR

KENNETH CHARLES PORTER APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM COUNTY CRIMINAL COURT NO. 5 OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I. Introduction

Appellant Kenneth Charles Porter entered a plea of nolo contendere to the offense of driving while intoxicated (DWI).  The trial court entered a judgment of guilty and sentenced him to 120 days’ confinement
.  In a single point, Porter contends that the trial court erred by denying his motion to dismiss for want of a speedy trial.  We will affirm
.

II.  Factual and Procedural Background
(footnote: 2)
 On May 25, 2003, state troopers responded to a two-vehicle traffic accident and found Porter standing outside his vehicle.  Porter had a split upper lip; he was slurring his speech, was stumbling, had bloodshot eyes, and smelled of alcohol.  An ambulance took Porter to the hospital, and two troopers followed the ambulance.  At the hospital, one trooper requested a blood sample from Porter and read to Porter from a “DIC-24” form, which contains the statutory warnings that are required when an officer requests a blood sample from a person who is under arrest for driving while intoxicated.
(footnote: 3)  This form reads in part: “You are under arrest for an offense arising out of acts alleged to have been committed while you were operating a motor vehicle . . . in a public place while intoxicated . . . .”  Porter signed the DIC-24 form and gave a blood sample.  

On November 30, 2004, the State filed an information charging Porter with DWI.  About a month later, on December 21, 2004, Porter filed a motion to dismiss and a motion for a speedy trial.  Approximately three months later, on March 7, 2005, the trial court held a hearing on Porter’s motions.  At the hearing, Porter was the only witness to testify.  He testified that he was asked to take a breath and blood test.  But in answer to whether anyone had informed him that he was in custody at the hospital, he responded, “Not to my knowledge.  I wasn’t aware that I was being arrested.  I mean . . . .”  Porter further testified that the trooper did not take him to a police station, did not book him into any city or county jail, and that no bond was set at that time.  The trial court denied Porter’s motion to dismiss the charge against him but granted Porter’s motion for a speedy trial.  On April 15, 2005, Porter entered a plea of nolo contendere, and the trial court entered a judgment of guilty. 

III. Speedy Trial

In his sole point, Porter complains that the trial court erred by denying his motion to dismiss for want of a speedy trial.  Specifically, Porter argues that he was denied a speedy trial based on the delay—twenty-one months—between his alleged arrest in the hospital on May 25, 2003, and the March 7, 2005 hearing.  The State argues that Porter was not arrested in the hospital on May 25, 2003 and that, accordingly, his right to a speedy trial did not attach until the State filed the information on November 30, 2004 that charged him with an offense.     

When reviewing a trial court’s ruling on a speedy trial claim, we review legal issues de novo but give deference to a trial court's resolution of factual issues.  
Kelly v. State
, 163 S.W.3d 722, 726 (Tex. Crim. App. 2005).  We give deference not only to a trial court's resolution of disputed facts but also to its drawing of reasonable inferences from the facts.  
Id.
  When, as here, the defendant does not prevail on a speedy trial claim, we presume the trial court resolved any disputed fact issues in favor of the State, and we defer to these implied findings of fact that the record supports. 
 Zamorano v. State,
 84 S.W.3d 643, 648 (Tex. Crim. App. 2002).

The Sixth Amendment to the United States Constitution guarantees the accused's right to a speedy trial.  
U.S. Const. 
amend. VI.  The right to a speedy trial is fundamental and is imposed on the states by the Due Process Clause of the Fourteenth Amendment.  
Barker v. Wingo
,  407 U.S. 514, 515-16, 92 S. Ct. 2182, 2184-85 (1972); 
see 
U.S. Const. 
amend. XIV.  In addition, article I, section 10 of the Texas Constitution guarantees the accused in all criminal prosecutions the right to a speedy and public trial.  
Tex. Const. 
art. I, § 10.  If a violation of the speedy trial right is established, the only possible remedy is dismissal of the prosecution.  
Strunk v. United States
, 412 U.S. 434, 440, 93 S. Ct. 2260, 2263 (1973).
  

In determining whether an accused has been denied his right to a speedy trial, we use a balancing test to weigh the conduct of both the prosecution and the defendant. 
 See Barker, 
407 U.S. at 530, 92 S. Ct. at 2191-92; 
Dragoo v. State
, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003).  The factors to be weighed include the length of the delay, the reason for the delay, the defendant's assertion of his speedy trial right, and the prejudice to the defendant resulting from the delay. 
 Barker,
 407 U.S. at 530, 92 S. Ct. at 2192;
 Dragoo, 
96 S.W.3d at 313.  
No single factor alone is necessary or sufficient to establish a violation of the right to a speedy trial.
  Barker
, 407 U.S. at 530, 92 S. Ct. at 2192;
 Dragoo, 
96 S.W.3d at 313.

The first factor, length of the delay, is measured from the time the defendant is arrested or formally accused.  
United States v. Marion
, 404 U.S. 307, 313, 92 S. Ct. 455, 459 (1971); 
Dragoo, 
96 S.W.3d at 313.  We consider the other three factors only when the delay is long enough to be presumptively prejudicial to the defendant. 
 
Emery v. State
,  881 S.W.2d 702, 708 (Tex. Crim. App. 1994), 
cert. denied
, 513 U.S. 1192 (1995).  In general, delay approaching one year is sufficient to trigger a speedy trial inquiry.  
Doggett v. United States
, 505 U.S. 647, 652 n.1, 112 S. Ct. 2686, 2691 n.1 (1992); 
Shaw v. State
, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003).

Our analysis of Porter’s speedy trial claim hinges on whether Porter was arrested on May 25, 2003.  A person is arrested when he is actually placed under restraint or taken into custody.  
Tex. Code Crim. Proc. Ann.
 art. 15.22 (Vernon 2005).  An arrest is complete whenever a person’s liberty of movement is restricted or restrained.  
Hardinge v. State
, 500 S.W.2d 870, 873 (Tex. Crim. App. 1973).  A person is in “custody” only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest. 
 Dowthitt v. State
, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996); 
Cagle v. State
, 23 S.W.3d 590, 592 (Tex. App.—Fort Worth 2000, pet. ref’d) (op. on reh’g).  “The mere fact that an officer makes the statement to an accused that he is under arrest does not complete that arrest.  There must be custody or detention and submission to such arrest.” 
 Medford v. State
, 13 S.W.3d 769, 772-73 (Tex. Crim. App. 2000) (quoting 
Smith v. State,
153 Tex. Crim. 230, 232, 219 S.W.2d 454, 456 (1949)).

The taking of a blood sample is generally a search and seizure under the United States and Texas Constitutions.  
See Schmerber v. California, 
384 U.S. 757, 767, 86 S. Ct. 1826, 1834 (1966);
 
Aliff v. State
, 627 S.W.2d 166, 169 (Tex. Crim. App. 1982).  An officer requesting a blood sample must give statutory warnings, which are contained in the DIC-24 form, only if the person is under arrest.  
See 
Tex. Transp. Code Ann. 
§§ 724.002 (Vernon 1999), 724.015;
 Nottingham v. State
, 908 S.W.2d 585, 588 (Tex. App.—Austin 1995, no pet.).  But under certain circumstances, the taking of a blood sample without a warrant or consent is not an unreasonable search and seizure and does not violate the Fourth Amendment or article 1, section 9 of the Texas Constitution.  
See Aliff
, 627 S.W.2d at 170 (holding that taking of blood sample from person not under arrest does not violate the Fourth Amendment when officers have probable cause to arrest, exigent circumstances—such as the rapid rate at which alcohol dissipates from the blood, and a reasonable method of extraction).  

Several courts of appeals have held that the reading of the statutory warnings in the DIC-24 form constitute an arrest because a reasonable person would not feel free to leave after being told by a police officer that he was under arrest.  
See, e.g., Nottingham
, 908 S.W.2d at 588 (holding that officer arrested defendant when, pursuant to the DIC-24 warnings, he told defendant that she was under arrest)
; Bell v. State
, 881 S.W.2d 794, 799-800 (Tex. App.—Houston [14th Dist.] 1994, pet. ref’d) (holding that reading of DIC-24 warnings constituted some evidence that defendant was under arrest);  
Garcia v. State
, No. 07-99-0210-CR, 2000 WL 715925, at *2 (Tex. App.—Amarillo June 2, 2000, pet. ref’d) (not designated for publication) (holding that trial court did not err by finding that arrest occurred when officer read DIC-24 form and stated that defendant’s consent was unnecessary).
 But see Combest v. State
, 981 S.W.2d 958, 960 (Tex. App.—Austin 1998, pet. ref’d) (holding that no arrest occurred even though officer read appellant DIC-24 warnings because “[a]ppellant and the State both agree[d] and the record affirm[ed]” that appellant was not under arrest).

Here, the affidavit supporting the information stated that the trooper read Porter the statutory warnings, and the record includes a copy of the DIC-24 form signed by Porter.  But Porter testified that he did not think the trooper was arresting him at the hospital, and we defer to the trial court’s determination that Porter was a credible witness.  
See Kelly
, 163 S.W.3d at 727.  Additionally, all other evidence indicates that Porter was not under arrest on May 25, 2003. Porter was not restrained in any way, he was not taken to a police station, he was not booked, and he did not have to post bond.  The only evidence pointing to arrest is the trooper’s use of the DIC-24 form before taking a sample of Porter’s blood, but the ultimate determination of whether Porter was arrested cannot hinge on this fact alone.  
See Medford
, 13 S.W.3d at 772-73 (quoting 
Smith,
 153 Tex. Crim. at 232, 219 S.W.2d at 456).  The trooper may have used the DIC-24 form out of cautiousness, not because he intended to place Porter under arrest.  
See Dancy v. State
, 728 S.W.2d, 772, 777 (Tex. Crim. App.), 
cert. denied
, 484 U.S. 975 (1987) (stating that merely reciting 
Miranda
 warnings is more indicative of proper cautiousness than of officer’s intent to arrest). 

We hold that, deferring to the trial court’s resolution of disputed facts, the trial court did not err by concluding that Porter was not arrested on May 25, 2003.  Therefore, Porter’s right to a speedy trial did not attach until the State filed an information on November 30, 2004.  
See Marion
, 404 U.S. at 313, 92 S. Ct. at 459; 
Dragoo, 
96 S.W.3d at 313.  Porter concedes that his speedy trial rights were not violated by the three-month delay between the November 30, 2004 filing of the information against him and the hearing on his motions for speedy trial and to dismiss.  Because this delay does not satisfy the first prong of the 
Barker 
test, we need not address the remaining prongs.  
See Doggett
, 505 U.S. at 652 n.1, 112 S. Ct. at 2691 n.1; 
Barker, 
407 U.S. at 530, 92 S. Ct. at 2191-92
; Shaw
, 117 S.W.3d at 889.  Accordingly, we hold that the trial court did not err by denying Porter’s motion to dismiss for want of a speedy trial.  We overrule Porter’s only point.

IV. Conclusion

Having overruled Porter’s only point, we affirm the trial court’s judgment.

SUE WALKER

JUSTICE

PANEL B: WALKER, DAUPHINOT, and MCCOY, JJ.

MCCOY, J. concurs without opinion.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: December 8, 2005

FOOTNOTES
1:
See
 
Tex. R. App. P. 
47.4.

2:
The affidavit supporting the information sets forth the following facts of the case.  

3:
See 
Tex. Transp. Code Ann
. 
§ 724.015 (Vernon Supp. 2005).