IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-06-00037-CV

 

In the
Interest of E.A.R., E.A.R., and I.D.A., 

Children

 

 



From the 13th District Court

Navarro County, Texas

Trial Court No. 04-00-13593-CV

 



noTICe and briefing order










 

          The Court has reviewed the record and
the briefs filed by Appellant and Appellee.  After our review, the Court
questions its ability to address any issue raised in Appellant’s brief because
no statement of points was filed as required by Texas Family Code section
263.405(b).  See Tex. Fam. Code
Ann. § 263.405(i) (Vernon Supp. 2005); In re S.E., No.
04-05-00750-CV, 2006 Tex. App. LEXIS 2343, *3 (Tex. App.—San Antonio March 29, 2006,
no pet. h.); In re J.M.S., No. 06-05-00139-CV, 2005 Tex. App. LEXIS
10524, *2 (Tex. App.—Texarkana Dec. 20, 2005, no pet.).  Appellant has 14 days from
the date of this order to file a supplemental brief which addresses this issue
and explains why the issues in the brief filed on March 9, 2006 should not be
dismissed and the judgment affirmed.  Tex.
R. App. P. 38.9(b).

 

                                                          PER
CURIAM




Before
Chief Justice Gray,

          Justice
Vance, and

          Justice
Reyna

(Justice
Vance not participating)

Response
requested

Notice
issued and filed April 26, 2006

Publish






argin-left:.65in;margin-bottom:.0001pt;text-align:justify;layout-grid-mode:
char'>       (1)   any part of the body; or

       (2)   any physical object connected with
the body.

Tex. Penal
Code Ann. § 30.02(b) (Vernon
2003).

        Jenkins contends that the
evidence that he entered the victim’s girlfriend’s apartment, and that he did
so without the victim’s consent, was insufficient.  

        Legal Sufficiency. 
In Jenkins’s first issue, he contends that the evidence was legally
insufficient.  “In assessing the legal sufficiency of the evidence to support a
criminal conviction under Jackson v. Virginia, we consider all of the
evidence in the light most favorable to the verdict and determine whether,
based on that evidence and reasonable inferences therefrom, a rational juror
could have found the essential elements of the crime beyond a reasonable
doubt.”  Rollerson v. State, 227 S.W.3d 718, 724 (Tex. Crim. App. 2007)
(internal footnote omitted): see Jackson v. Virginia, 443 U.S. 307, 318-19 (1979); Foster v. State, 635 S.W.2d 710, 718 (Tex. Crim. App. [Panel
Op.] 1982) (op. on reh’g).  “A ‘legal sufficiency of the evidence review does
not involve any weighing of favorable and non-favorable evidence.’”  Margraves
v. State, 34 S.W.3d 912, 917 (Tex. Crim. App. 2000) (quoting Cardenas v.
State, 30 S.W.3d 384[, 389] (Tex. Crim. App. 2000)).  “[C]ourts reviewing
all the evidence in a light favorable to the verdict must assume jurors made
all inferences in favor of their verdict if reasonable minds could, and
disregard all other inferences in their legal sufficiency review.”  Evans v.
State, 202 S.W.3d 158, 165 n.27 (Tex. Crim. App. 2006) (quoting City of
Keller v. Wilson, 168 S.W.3d 802, 821 (Tex. 2005)).

        First, Jenkins argues that
there was no evidence that he entered the apartment.  Jenkins points to the
victim’s testimony to the effect that he did not know whether Jenkins’s feet
came inside the apartment.  Jenkins, however, notes the victim’s testimony to
the effect that Jenkins’s arm and hand holding the gun were inside the
apartment, and had to be in order to shoot the victim.  The State also points
to shell casings found inside the apartment.  A police detective testified that
shell casings found there would have landed there only if the gun were inside
the apartment when Jenkins fired the gun.  A rational jury could have found
beyond a reasonable doubt that Jenkins entered the apartment.  

        Next, Jenkins argues that he did not enter the
apartment without the victim’s consent.  Jenkins argues that “there was no
direct unequivocal evidence to support the State’s theory that the consent that
had been once conferred to enter the apartment was revoked—the closing of the
front door.”  (Br. at 7-8.)  Jenkins argues, “Complainant never testified he
actually closed the door.”  (Id. at 7.)  Jenkins notes, however, “What
[the complainant] did testify to was he ‘swung’ it closed.”  (Id. (quoting 4 R.R. at 158).)  The State points to the victim’s unequivocal
testimony that he slammed the door shut.  A rational jury could have found
beyond a reasonable doubt that the victim closed the apartment door and thus
revoked his consent for Jenkins to enter the apartment.

        The evidence was legally
sufficient.  We overrule Jenkins’s first issue.

        Factual Sufficiency. 
In Jenkins’s second issue, he contends that the evidence was factually
insufficient.  “In a factual sufficiency review, the evidence is reviewed in a
neutral light . . . .”  Roberts v. State, 220 S.W.3d 521,
524 (Tex. Crim. App. 2007), cert. denied, 76 U.S.L.W. 3165 (U.S. Oct. 1, 2007) (No. 07-5500); accord Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000).  “There is only one question to be answered in a factual
sufficiency review: Considering all of the evidence in a neutral light, was a
jury rationally justified in finding guilt beyond a reasonable doubt?”  Watson
v. State, 204 S.W.3d 404, 415 (Tex. Crim. App. 2006) (quoting Zuniga v.
State, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004), overruled on other
grounds, Watson at 405).  “Evidence is factually insufficient when
. . . the evidence is ‘so weak’ that the verdict ‘seems clearly wrong
or manifestly unjust,’ or the verdict is ‘against the great weight and
preponderance of the evidence.’”  Castillo v. State, 221 S.W.3d 689, 693
(Tex. Crim. App. 2007) (quoting Watson at 414-15, 417).  “[A]n appellate
court must first be able to say, with some objective basis in the record, that
the great weight and preponderance of the . . . evidence
contradicts the jury’s verdict before it is justified in exercising its
appellate fact jurisdiction to order a new trial.”  Watson at 417.

        Jenkins points, besides the
evidence pointed to above, to evidence that the victim had received notice that
the victim’s entry onto the area outside the apartment was forbidden.  See Tex. Penal Code Ann. § 30.05(a),
(b)(2) (Vernon Supp. 2006).  Jenkins argues that, that was the reason for the
victim’s going inside the apartment instead of talking to Jenkins outside the
apartment.  

        Considering all of the
evidence in a neutral light, a jury was rationally justified in finding beyond
a reasonable doubt that Jenkins entered the apartment without the victim’s
consent.  The evidence was factually sufficient.  

        We overrule Jenkins’s second
issue.

        Speedy Trial.  In Jenkins’s third issue, he
contends that the trial court erred in overruling Jenkins’s “Motion to Dismiss
(Constitutional Right to a Speedy Trial).”    

        “In all criminal prosecutions,
the accused shall enjoy the right to a speedy . . . trial
. . . .”  U.S. Const.
amend. VI; see Tex. Const.
art. I, § 10.  “In reviewing the trial court’s ruling on appellant’s
federal constitutional speedy trial claim, we apply a bifurcated standard of
review: an abuse of discretion standard for the factual components, and a de
novo standard for the legal components.”  Zamorano v. State, 84
S.W.3d 643, 648 (Tex. Crim. App. 2002) (citing State v. Munoz, 991
S.W.2d 818, 821 (Tex. Crim. App. 1999)); accord Kelly v. State, 163
S.W.3d 722, 726 (Tex. Crim. App. 2005).  Where the “appellant lost in the trial
court on his speedy trial claim, we must presume the trial court resolved any
disputed fact issues in the State’s favor, and we must also defer to the
implied findings of fact that the record supports.”  Zamorano at 648
(citing Munoz at 821); see Kelly at 726-27.  “An appellate court
reviewing a trial court’s ruling on a motion to dismiss for want of a speedy
trial must do so in light of the arguments, information, and evidence that was
available to the trial court at the time it ruled.”[1]  Shaw v. State, 117 S.W.3d 883, 889 (Tex.
Crim. App. 2003); accord Dragoo v. State, 96 S.W.3d 308, 313
(Tex. Crim. App. 2003).

        “In determining whether a
criminal defendant has been denied his federal or state constitutional right to
a speedy trial, a court must use a balancing test in which the conduct of both
the State and the defendant are weighed.”  Shaw, 117 S.W.3d at 888; see
Barker v. Wingo, 407 U.S. 514, 530 (1972); Kelly, 163 S.W.3d at 724,
726.  “[S]ome of the factors which courts should assess in determining whether
a particular defendant has been deprived of his right” to a speedy trial are:
“Length of delay, the reason for the delay, the defendant’s assertion of his
right, and prejudice to the defendant.”  Barker at 530; see Shaw at
889.

        “The first factor, the length
of the delay, is measured from the time the defendant is arrested or formally
accused.”  Shaw, 117 S.W.3d at 889 (citing United States v. Marion, 404
 U.S. 307, 313 (1971)).  “The length of the delay is to some extent a
triggering mechanism.”  Barker, 407 U.S. at 530.  “[A] speedy
trial claim will not be heard until the passage of a period of time that is prima
facie unreasonable under the circumstances.”  Shaw at 889 (citing Doggett
v. United States, 505 U.S. 647, 651-52 (1992)).  “In general, delay
approaching one year is sufficient to trigger a speedy trial inquiry.”  Id. (citing Doggett at 652 n.1).  “If the accused makes this showing, the
court must then consider, as one factor among several, the extent to which the
delay stretches beyond the bare minimum needed to trigger judicial examination
of the claim.”  Id. (quoting Doggett at 652).  “[T]he State [i]s
entitled to a reasonable period in which to prepare its case,” which “may not
be counted against the State.”  Shaw at 889-90.

        As to the reason for the
delay, “different weights should be assigned to different reasons.”  Barker,
407 U.S. at 531; accord Dragoo, 96 S.W.3d at 314.  “[I]t is improper
for the prosecution intentionally to delay ‘to gain some tactical advantage
over [defendants] or to harass them.’”  Barker at 531 n.32 (quoting Marion,
404 U.S. at 325) (alteration in Barker).  “A deliberate attempt to
delay the trial in order to hamper the defense should be weighted heavily
against the” State.  Barker at 531; accord Whitfield v. State, 137
S.W.3d 687, 690 (Tex. App.—Waco 2004, no pet.).  “A more neutral reason such as
negligence or overcrowded courts should be weighted less heavily
. . . .”  Barker at 531; accord Zamorano, 84
S.W.3d at 649.  “Finally, a valid reason, such as a missing witness, should
serve to justify appropriate delay.”  Barker at 531.  

        As to the defendant’s
assertion of the right, “the defendant’s assertion of his speedy trial right
. . . is entitled to strong evidentiary weight in determining whether
the defendant is being deprived of the right.”  Barker, 407 U.S. at 531-32; see Zamorano, 84 S.W.3d at 651.  “[B]arring extraordinary
circumstances,” courts “[sh]ould be reluctant indeed to rule that a defendant
was denied th[e]” Sixth Amendment “constitutional right on a record that
strongly indicated . . . that the defendant did not want a speedy
trial.”  Barker at 536.  “[T]he failure to assert the right will make it
difficult for a defendant to prove that he was denied a speedy trial.”  Id. at 532; Zamorano at 651.  “[A] defendant’s failure to make a
timely demand for a speedy trial indicates strongly that he did not really want
one and that he was not prejudiced by not having one.”  Shaw, 117 S.W.3d
at 890; accord Harris v. State, 827 S.W.2d 949, 957 (Tex. Crim. App.
1992).  “Furthermore, the longer the delay becomes, the more likely it is that
a defendant who really wanted a speedy trial would take some action to obtain
one.”  Shaw at 890; accord Dragoo, 96 S.W.3d at 314.  Moving for
“a dismissal instead of a speedy trial weakens [a speedy trial] claim because
it shows a desire to have no trial instead of a speedy trial.”  Zamorano
at 651 n.40 (quoting Parkerson v. State, 942 S.W.2d 789, 791 (Tex.
App.—Fort Worth 1997, no pet.)) (alteration in Zamorano).     

        As to the fourth factor, the
prejudice to the defendant resulting from the delay, such prejudice “should be
assessed in the light of the interests of defendants which the speedy trial
right was designed to protect.”  Barker, 407 U.S. at 532.  The Supreme
“Court has identified three such interests: (i) to prevent oppressive
pretrial incarceration; (ii) to minimize anxiety and concern of the
accused; and (iii) to limit the possibility that the defense will be
impaired.”  Id.; accord Shaw, 117 S.W.3d at 890.  Of those
interests, “the most serious is the last, because the inability of a defendant
adequately to prepare his case skews the fairness of the entire system.”  Barker
at 532; accord Shaw at 890. 

        As to the length of the delay
here, the length in question stretches from Jenkins’s arrest on January 7,
2005, until March 20, 2006, when Jenkins’s trial that ended in a verdict began,
about fourteen and one half months later.  That delay is sufficient to trigger
the Brady analysis, but extends little beyond the minimum required to do
so.  A delay of thirteen months is “not extraordinary.”  Harris, 827
S.W.2d at 957.  The trial court could have found that the length of the delay
was not extraordinary.  If this factor weighs against the State, it does not do
so heavily.

        As to the reasons for the
delay, the State pointed, first, to the trial court’s docket.  In September
2005, when Jenkins’s case was first set for trial, the court tried a defendant
who had been in jail awaiting trial at least four months longer than Jenkins. 
On the trial court’s next criminal trial setting, in October 2005, the court
tried a defendant for capital murder.  See Tex. Penal Code Ann. § 19.03 (Vernon Supp. 2006).  On
the trial court’s next criminal trial setting, in November 2005, the trial
court began trial of another capital-murder defendant, whose trial resulted in
mistrial.  In the trial court’s next criminal trial setting, in December 2005,
the trial court retried the capital-murder defendant whose trial had resulted
in mistrial.  In the trial court’s next criminal trial setting, in January
2006, the trial court began Jenkins’s first trial, which ended in mistrial.  In
February 2006, the trial court began Jenkins’s second trial, which also ended
in mistrial.[2]  In March 2006, the trial court began Jenkins’s
third trial, in which the jury returned a verdict of guilt.  The State and
Jenkins also pointed to the motion to withdraw of Jenkins’s first appointed
attorney, in which Jenkins joined.  Delay in appointing replacement counsel was
caused by Jenkins’s representation to the trial court that Jenkins had retained
counsel.  The trial court could have found that the reason for the delay was
largely the neutral reason of the court’s docket, and could have found that
Jenkins’s conduct caused a significant part of the delay.  If this factor
weighs against the State, it does not do so heavily.

        As to Jenkins’s assertion of
the speedy-trial right, he failed to assert it for ten and one half months
after his arrest.  Jenkins then urged a motion to dismiss, of the overruling of
which he now complains, instead of a motion for speedy trial.    The trial
court could have found that Jenkins did not want a speedy trial, but wanted a
dismissal instead.  This factor weighs against Jenkins.

        As to prejudice, Jenkins
pointed to the death of his mother while he was awaiting trial, and argued that
only his mother could have testified to Jenkins’s criminal history and thus to
Jenkins’s eligibility for community supervision.  See Tex. Code Crim. Proc. Ann. art. 42.12,
§ 4(b)(3), (e) (Vernon ­­­­­­­­­­2006).  The State pointed to other relatives
who might have testified to Jenkins’s criminal history.[3]  The trial court could have found that Jenkins
did not show prejudice.  This factor weighs against Jenkins.

        On balance, the factors weigh
against finding a speedy trial violation.  We overrule Jenkins’s third issue.

        CONCLUSION.  Having overruled
Jenkins’s issues, we affirm.

TOM GRAY

Chief Justice

Before Chief Justice Gray,

        Justice Vance, and

        Justice Reyna

        (Justice Vance dissenting)

Affirmed 

Opinion delivered and filed November 7, 2007

Do not publish

[CRPM]

 









                [1] At
the hearings on Jenkins’s motion to dismiss, the only evidence that the parties
offered was Jenkins’s offer of a county clerk’s certification of death of
Ernestine Jenkins.  We thus rely largely on the argument of the parties at the
hearings in our analysis.  See Loredo v. State, 159 S.W.3d 920, 923-24 (Tex. Crim. App. 2004).





                [2] The
record does not show the reasons for the several mistrials.





                [3] Jenkins’s aunt testified at trial as to
Jenkins’s criminal history.