IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-0023-04






CARLOS KELLY, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE THIRTEENTH COURT OF APPEALS


REFUGIO COUNTY





 Keller, P.J., delivered the opinion of the Court in which MEYERS, PRICE,
HOLCOMB, and COCHRAN, JJ., joined. WOMACK, JOHNSON, KEASLER, and
HERVEY, JJ., concurred in the result.


O P I N I O N 




 We granted review to determine whether the court of appeals erred in its speedy trial analysis. 
We conclude that the court of appeals erred in several respects.

I. BACKGROUND


A. Facts


 Appellant was arrested on May 6, 2001. He was charged with possession of more than four
grams of a controlled substance (the present offense) and was released on bond. The State also filed
a motion to revoke probation in a prior case - alleging the present offense as grounds for revocation. 
Appellant was indicted on July 20, 2001, and the State filed an announcement of ready on that date. 
Appellant appeared for arraignment on August 21, 2001. 

 In a motion for physical inspection of the evidence, filed on September 21, 2001, appellant
asserted that he had a good faith belief that the amount of substance seized was less than the State
claimed. Appellant subsequently appeared for a setting on September 27, 2001, but his attorney was
absent. Appellant and his attorney both appeared at a setting on October 18, 2001. On October 22,
2001, the State submitted the seized substance for analysis by the Texas Department of Public Safety
(DPS). While analysis was pending, another setting occurred on November 13, 2001, but defense
counsel did not appear at this setting. On December 6, 2001, the DPS laboratory provided a report
that concluded the amount of controlled substance was 0.92 grams. 

 Another setting occurred on December 17, 2001 and again defense counsel did not appear.
He did appear for the next setting, on February 7, 2002. The motion to revoke in the prior case was
heard on February 27, 2002. Appellant's probation was revoked, and he was sentenced to five years
imprisonment. 

 On June 12, 2002, the State sent a letter to the district clerk announcing that the case was
"now ready to be set on the criminal docket" and requesting a trial setting on July 9, 2002. Appellant
appeared for the setting on July 9, 2002, but was late for court. The trial court reset the case for July
29, 2002. On July 10, 2002, the State filed an unopposed motion for continuance on the ground that
one of its witnesses was required to undergo training to renew a certification and would be
unavailable on July 29. 

 On August 2, 2002, appellant filed a motion to dismiss on speedy trial grounds. The trial
court reset the case to September 17, 2002 and later to October 7, 2002. Appellant's motion to
dismiss was heard on October 7, 2002, which was also the date of trial. During the hearing,
appellant testified that he had been employed before his arrest, but could not find work because he
was required to repeatedly appear at court. He also explained that he was required to seek
transportation to and from court from other family members, who were also inconvenienced. 
Appellant also claimed that he was "real worried" because of the pendency of the case, which he
understood to be a second-degree felony, as charged by the State. He further testified that his
memory of events surrounding his search and arrest was not as clear as it was immediately after the
events. On cross-examination, appellant acknowledged that his attorney had told him that the
laboratory tests confirmed the actual amount of controlled substance at less than a gram. He also
admitted that his probation reporting requirements in the prior case required him to miss work and
to travel farther than his court appearances in the present case demanded. 

 The prosecutor testified that he could have been ready for trial before receiving the laboratory
analysis in December of 2001 because he could have ordered the lab analysis to be expedited. He
did not do so because the case was not set for trial and it was expensive for the lab to take things out
of order. Other than the comments about the lab and the brief unavailability of a prosecution witness
(discussed above), the prosecutor provided no explanation for the seventeen-month delay in this
case.

 The trial court denied the motion to dismiss without issuing findings of fact. That same day,
appellant pleaded no contest to possession of less than one gram of a controlled substance, a lesser
offense than that alleged in the indictment. Pursuant to a plea agreement, the trial court deferred
adjudication, assessed a fine of $1500, and placed appellant on community supervision for five years,
to begin upon release from imprisonment in the companion case. 

B. Court of Appeals Opinion


 On original submission, the court of appeals addressed appellant's speedy trial claim under
the four-factor balancing test set out in Barker v. Wingo, which requires balancing the following
factors: (1) length of delay, (2) reason for delay, (3) assertion of the right, and (4) prejudice. (1) The
court initially found that the seventeen-month delay in this case was sufficiently long to trigger
examination of the other Barker factors, and in fact, was more than twice as long as the minimum
amount of time held necessary to do so. (2) The court further found that the State did not have good
reasons for the delay and concluded that the cause of the delay was the State's negligence. (3) In
reaching this conclusion, the court observed the following: (1) the State could have, but did not,
expedite laboratory testing of the seized controlled substance, (2) cases in the district court were set
in accordance with the request of the prosecutor, and the prosecutor was slow in requesting a trial
setting, (3) assuming arguendo that the certification training for one of the State's witnesses was a
good excuse, the State did not explain why the trial could not have been set in the months preceding
the training deadline or shortly after training was completed, and (4) the State provided no
explanation for the delay of the case for eight months after the companion probation revocation case
was resolved in February of 2002. (4) 

 With regard to the "assertion of the right" factor, the court of appeals found that appellant's
failure to oppose the State's motion for continuance of the July 29, 2002, trial setting was the
equivalent of the single "not ready" announcement attributable to the defendant in Zamorano v.
State. (5) Observing that appellant asserted his right to a speedy trial four days after the continued
setting, the court concluded that the third Barker factor weighed against the State.

 Finally, the court of appeals reviewed the prejudice factor de novo because "the State did not
refute the facts asserted by Kelly with regard to the prejudice the delay caused him." (6) The court
conceded that prejudice was mitigated by the fact that appellant was on bail and that appellant failed 
to prove any specific prejudice to the preparation and presentation of his defense. (7) Nevertheless, the
court of appeals held that the prejudice factor weighed in appellant's favor because appellant testified
to an inability to find a job due to the time commitment imposed by court appearances and because
appellant testified that the severity of the charged, second-degree offense worried him. (8)

 After the court of appeals issued its original opinion, the State filed a motion to supplement
the record and a motion for rehearing. The motion to supplement requested that the record be
supplemented with resetting docket notices signed by appellant and/or his attorney during the
pendency of this case. The notices indicated that appellant's attorney was not present in court on
three dates. In its motion for rehearing, the State urged three circumstances justifying the delay in
this case: "(1) trial counsel's absence from three pre-trial court appearances; (2) ongoing plea
negotiations that were hampered by trial counsel's absence; and (3) the prosecutor's trial of one jail
case after February 27, 2002." (9) 

 In a written opinion, the court of appeals granted the motion to supplement but denied
rehearing. The court rejected the argument that defense counsel may have hampered plea
negotiations because the prosecutor "did not testify that plea negotiations were ongoing or that
negotiations were hampered by defense counsel's absence." (10) The court further questioned whether
"counsel's absence from court for pre-trial appearances on days that the accused personally appeared
is a reason for delay that weighs against the accused." (11) In any event, the court held that at least two
of the three absences were irrelevant because they occurred before laboratory testing was completed,
and "[u]ntil the test results were back, any plea negotiations would have centered on the
'overcharged' second-degree felony, not the state jail felony to which Kelly ultimately pleaded." (12)

 With regard to the State's argument that some of the delay was due to the State giving
priority to a jail case, the court observed that the prosecutor never testified that the delay of
appellant's case was due to a crowded docket or that the jail case delayed the trial of appellant's case. 
The court pointed out that the prosecutor never testified to how long the jail case took to try. 

II. ANALYSIS


 As the court of appeals stated, Barker v. Wingo sets out the appropriate test for evaluating
speedy trial claims. In conducting a speedy trial analysis under the Barker test, we review legal
issues de novo but give deference to a trial court's resolution of factual issues. (13) We conclude that
the court of appeals's opinion is mistaken in three respects, two of which relate to the resolution of
factual issues and one of which relates to a purely legal question. We address each of these in turn.

A. Factual Issues - Deference to the Trial Court


1. The Ability to Draw Inferences from the Facts (Reasons for Delay)


 In this case, what it means to give deference to the resolution of factual issues warrants some
discussion. We have held that the standard for evaluating factual issues within the context of a
speedy trial claim is the same as the standard for reviewing historical fact issues in the context of a
motion to suppress. (14) Under this standard, deference must be given not only to a trial court's
resolution of disputed facts, but also to the drawing of reasonable inferences from the facts. In
Manzi v. State, (15) we discussed the United States Supreme Court's holding in Anderson v. City of
Bessemer City (16) that deference must be given to trial court findings even when those findings do not
turn upon the assessment of credibility and demeanor. (17) Anderson referred not only to a trial court's
evaluation of the reliability of documentary evidence but also to the trial court's ability to draw
inferences from undisputed facts: "Where there are two permissible views of the evidence, the
factfinder's choice between them cannot be clearly erroneous. This is so even when the district
court's findings do not rest on credibility determinations, but are based instead on physical or
documentary evidence or inferences from other facts." (18) The reasons for giving deference when
evaluating the credibility of affidavits - that trial judges have acquired expertise as factfinders and
that re-litigating the facts entails substantial costs with only a negligible contribution to accuracy (19)
- apply equally to the drawing of inferences. Moreover, the trial judge's personal knowledge of the
parties and the sequence of events do in fact place him in a better position to draw inferences than
an appellate court without such familiarity. (20) 

 With regard to the "reasons for delay" factor, the court of appeals failed to properly defer to
the trial court's ability to draw inferences from the facts. Contrary to the court of appeals's
conclusion, the trial court could have inferred that defense counsel's failure to appear at three
settings caused some of the delay in the case. And as the court of appeals pointed out, one of the
absences occurred after the substance had been analyzed - indicating that defense counsel's own
readiness was not, in fact, solely dependent on the progress of the laboratory testing. 

 Moreover, while the prosecutor did not testify to the existence of ongoing plea negotiations,
the trial court could have inferred it from the circumstances. Plea negotiations are an extremely
common occurrence, as the vast majority of criminal cases are resolved by negotiated settlement. 
The trial court had reason to believe that plea negotiations began as early as September 21, 2001,
when appellant first claimed that the amount of controlled substance was substantially less than what
was charged, and there was even greater reason to believe that negotiations were ongoing after the
State's own testing revealed that appellant's claim was correct. Indeed, one rational explanation for
the eight-month delay after the resolution of companion revocation case could be that the parties
were still wrangling over the amount and type of punishment to be imposed. And in fact, the present
case was resolved by plea bargain.

 Moreover, the court of appeals errs to discount plea negotiations before the receipt of
laboratory test results on the ground that such negotiations could not involve the lesser offense. 
Appellant placed the State on notice that he anticipated test results showing a substantially smaller
amount of controlled substance, and the parties could well have taken into account in plea
negotiations the possibility that laboratory analysis would confirm appellant's claim.

2. The ability to disbelieve witnesses (prejudice)


 Although the trial court deserves deference even when credibility is not in issue, deference
is especially appropriate when credibility is involved. (21) Accordingly, we held in State v. Ross (22) that
the factfinder is empowered, on the basis of credibility and demeanor evaluations, to completely
disregard a witness's testimony, even if that testimony is uncontroverted. (23) 

 In Zamorano v. State we suggested that evidence of anxiety, offered solely through the
defendant's own testimony, was "some evidence" to support a finding of prejudice because "the
State did not challenge the [defendant's] testimony." (24) But that suggestion was unnecessary because
we concluded that "the sword of Damocles weighs no less" even if the anxiety suffered was simply
the usual fear of conviction and punishment. (25) Moreover, the present situation does not appear to
be the type envisioned in Whitehead v. State (26) as being amenable to a less deferential factual review. 
While evidence of anxiety and financial disruption attending the delay in trial may in some ways be
similar to evidence of the defendant's financial ability in the context of appointment of counsel, the
consequence of erroneously ruling in the defendant's favor in the latter type of case - dismissing the
prosecution - is not "relatively innocuous." (27)

 At any rate, Zamorano did not hold, or even suggest, that the presence of uncontroverted
testimony gave an appellate court the authority to conduct a de novo review of underlying historical
facts. Even under Whitehead's less deferential standard, a great deal of deference is still given to
the trial court's resolution of such matters: the trial court is permitted to disbelieve evidence so long
as there is a reasonable articulable basis for doing so. (28) 

 In the present case, the record provides several reasonable articulable bases for disbelieving
appellant's claims of prejudice. Appellant acknowledged on cross-examination that the trial
appearances required by the prosecution of the present case were less onerous than the reporting
requirements for his probation. Moreover, appellant knew by December of 2002 that testing had
revealed the amount of the substance to be much smaller than that charged. The trial court could
have reasonably surmised that appellant knew, from discussion with his attorney, that this amount
was in the state-jail-felony range rather than in the second-degree range. 

 Once appellant's probation was revoked on the prior offense and he was sentenced to five
years in prison in February of 2002, having a job was no longer an issue. And appellant's then-existing incarceration attenuated any "Sword of Damocles" concern about the risk of future
incarceration. That risk had been realized. Although this prosecution had the potential to add more
time to that imprisonment, it was no longer true that a dramatic life-change was hanging over
appellant's head, and in fact, the maximum punishment he could receive was significantly less than
the sentence he was already serving. For these reasons, the trial court could have concluded that
appellant's claims of anxiety and loss of work, even if believed, did not weigh in his favor because
he was already incarcerated for another offense.. 

B. Legal Issue: Assertion of the Right


 The court of appeals found appellant's failure to oppose the State's motion for continuance
on one occasion to be the equivalent of the single "not ready" announcement in Zamorano. But in
so holding, the court of appeals overlooked the context in which the Zamorano "not ready"
announcement took place. In Zamorano, the defendant was charged on October 20, 1995, and made
bail. (29) On a setting occurring on July 19, 1996, the defendant announced, "not ready" because he
needed three days to draft and file written pretrial motions in limine, to suppress evidence, and to
request a list of the State's witnesses. (30) On June 3, 1998, nearly two years after this three-day
continuance, the defendant filed a motion to dismiss on speedy trial grounds. (31) This motion was
heard and denied on August 21, 1998. (32) A motion to reconsider was filed on October 19, 1998, but
trial did not occur until August 6, 1999, more than a year after the defendant filed his original
motion. (33) In Zamorano, we acknowledged that the defendant's original motion to dismiss was tardy,
but held that the second attempt to seek a speedy trial evidenced persistence, causing the assertion
of the right factor to weigh in the defendant's favor. (34) 

 In the present case, the tardiness of the appellant's motion to dismiss is a far more significant
factor than any alleged "not ready" equivalent that might be read into the defendant's acquiescence
to the State's July 29th motion for continuance. Appellant waited over a year to file his motion to
dismiss on speedy trial grounds, but the case progressed to trial approximately two months after the
motion was filed. By contrast, Zamorano's trial took place over a year after the filing of his motion. 
So while Zamorano's motion was tardy, it was well in advance of the date on which he was actually
tried. Here, however, appellant received his trial only two months after he first indicated his interest
in a speedy trial. And Zamorano's request for reconsideration, which we found to be evidence of
persistence in asserting the right, was filed four months after the original motion was filed (and
nearly two months after the court had denied the original motion). Had Zamorano's case progressed
as quickly as appellant's after the initial motion was filed, he would have had no occasion to file a
motion for reconsideration because the case would have been resolved by then. Under those
circumstances, we cannot agree with the court of appeals's legal conclusion that the assertion of the
right factor weighs in appellant's favor. Appellant's assertion was tardy, it was made only once, and
trial occurred within a relatively short time thereafter.

C. Balancing the factors


 Because the court of appeals erred in several respects in its speedy trial analysis and our
resolution of the State's ground for review has resulted in our re-analyzing most of the Barker
factors, we exercise our discretion to resolve the speedy trial issue under the principles set forth in
this opinion. Although the delay was somewhat lengthy in this case, the trial court could have
reasonably concluded that some of that delay - especially at the beginning of the case - was
attributable to appellant. Because of counsel's failure to appear at three settings, we cannot conclude
that the reasons for delay weigh heavily, if at all, against the State before appellant's probation
revocation in February. And the amount of prejudice suffered before the February revocation was
relatively limited. The trial court could have rationally concluded that appellant's probation on the
prior offense interfered more with his ability to find a job than the burdens associated with the new
prosecution. And the trial court could have found that anxiety about the offense was significantly
attenuated in December, when the drug test results showed that the substance weighed significantly
less than the State had originally claimed. 

 The delay after appellant's probation revocation is less excusable, and we find that the latter
delay weighs moderately against the State. But the trial court could have concluded that the
prejudice suffered after that point was virtually nonexistent, because appellant was already
incarcerated on a different offense. Moreover, appellant's failure to assert his right until August
2002 weighs heavily against him. Not only was this assertion tardy, occurring after a year had
passed, but the assertion was made when appellant was no longer suffering the same degree of
prejudice suffered by one who is not incarcerated. Further, the case was tried approximately two
months after the speedy trial right was first asserted. And had there been witnesses appellant wished
to call, they could have appeared at the hearing on the motion to revoke probation. After balancing
the factors, we conclude that they weigh against finding a speedy trial violation. 

 The judgment of the court of appeals is reversed and the case is remanded to that court to
address appellant's remaining points of error.

 Keller, Presiding Judge 

Date delivered: April 13, 2005

Publish
1. Kelly v. State, 122 S.W.3d 227, 236 (Tex. App.-Corpus Christi 2003)(citing Barker v.
Wingo, 407 U.S. 514 (1972)).
2. Id. at 238.
3. Id. at 239.
4. Id.
5. Id. at 240 (citing Zamorano v. State, 84 S.W.3d 643, 651 (Tex. Crim. App. 2002)).
6. Id. (citing Moreno v. State, 987 S.W.2d 195, 201 ((Tex. App.-Corpus Christi 1999, pet.
ref'd).
7. Id.
8. Id.
9. Kelly v. State, 122 S.W.3d 241, 242 (Tex. App.-Corpus Christi 2003).
10. Id.
11. Id.
12. Id.
13. Zamorano v. State, 84 S.W.3d at 648 (Tex. Crim. App. 2002); Johnson v. State, 954
S.W.2d 770, 771 (Tex. Crim. App. 1997).
14. State v. Munoz, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999)(citing Guzman v. State,
955 S.W.2d 85 (Tex. Crim. App. 1997)).
15. 88 S.W.3d 240 (Tex. Crim. App. 2002)
16. 470 U.S. 564 (1985).
17. 88 S.W.3d at 243 (quoting from Anderson, 470 U.S. at 573-574).
18. Manzi, 88 S.W.3d at 243 (quoting Anderson, 407 U.S. at 574)(emphasis added).
19. Id. at 244-255.
20. See Ornelas v. United States, 517 U.S. 690, 699 (1996)(discussing the trial judge's
view of "the facts of a particular case in light of the distinctive features and events of the
community" as providing a context for drawing "inferences that deserve deference").
21. Guzman, 955 S.W.2d at 89.
22. 32 S.W.3d 855 (Tex. Crim. App. 2000).
23. Id. at 855.
24. 84 S.W.3d at 654.
25. Id.
26. 130 S.W.3d 866 (Tex. Crim. App. 2004).
27. Id. at 876.
28. Id.
29. 84 S.W.3d at 647.
30. Id. at 650.
31. Id. at 647.
32. Id.
33. Id.
34. Id. at 651-652.