6-96-028-CV Long Trusts v. Dowd 



















In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-06-00043-CV
______________________________



IN RE:
SAMMY EARL WOODS




Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Original Mandamus Proceeding





Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 


Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION
Â Â Â Â Â Â Â Â Â Â Â Â Sammy Earl Woods has filed in this Court a petition for writ of mandamus in which he seeks
the return of $462.00. 
Â Â Â Â Â Â Â Â Â Â Â Â First, we note that Woods has not made clear to whom he refers when he asks this Court to
order "them to answer my motions" and to order "them to return" the money to him. We read the
pronoun "them" as a likely reference to the district attorney's office, over which we have no
jurisdiction to issue a writ of mandamus. See Tex. Gov't Code Ann. Â§ 22.221(b) (Vernon 2004);
Garner v. Gately, 909 S.W.2d 61, 62 (Tex. App.âWaco 1995, orig. proceeding). As an
intermediate court of appeals, this Court has authority to issue writs of mandamus agreeable to the
principles of law regulating those writs against district and county court judges within our district.


 
See Tex. Gov't Code Ann. Â§ 22.221(b). 
Â Â Â Â Â Â Â Â Â Â Â Â Even reading the petition as a request that this Court direct the trial court to order the return
of $462.00, we conclude Woods has not provided this Court with an adequate record to demonstrate 
he is entitled to the relief sought. In his petition, he asserts that an order dated October 24, 2005,
required the return of the money. But Woods has provided us no such order. Woods has attached
to his petition copies of only two documents, neither of which orders the return of any currency.
Â Â Â Â Â Â Â Â Â Â Â Â One of the orders Woods has attached to his petition denies his request for a bench warrant
and orders that a trial in the underlying proceeding, trial court cause number CV-305, be set for 
October 24, 2005. Woods has not shown that the trial that was to be held October 24, 2005, resulted
in an order that the money be returned to him.
Â Â Â Â Â Â Â Â Â Â Â Â The other order attached to Woods' petition is one filed March 16, 2005, granting the State's
motion to dismiss in connection with another, seemingly unrelated, cause number. We cannot
determine the relationship of this order to the petition before us. We only note that, if such order is,
in fact, a dismissal of an action seeking return of the $462.00, Woods' most likely remedy, if any,
concerning that order would be through appeal. If that is the case, mandamus is not available. 
Mandamus issues only when the party seeking mandamus has shown that there is no other adequate
remedy available and that the act sought to be mandated is ministerial. See Braxton v. Dunn, 803
S.W.2d 318, 320 (Tex. Crim. App. 1991); Whitsitt v. Ramsay, 719 S.W.2d 333, 335 (Tex. Crim.
App. 1986).
Â Â Â Â Â Â Â Â Â Â Â Â The very limited record before us fails to show that Woods is entitled to mandamus relief. 
See Tex. R. App. P. 52.3(j)(1). Extracting what information we can from his three-sentence petition
and the two documents included with his petition, we conclude that Woods has not shown he is
entitled to the remedy he seeks.
Â 
Â 
Â Â Â Â Â Â Â Â Â Â Â Â We deny the petition for writ of mandamus.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Josh R. Morriss, III
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice

Date Submitted:Â Â Â Â Â Â Â Â Â Â April 26, 2006
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â April 27, 2006



tion had been on file for approximately two months. In assessing a
speedy trial claim on appeal, we are not to consider arguments that are made for the first time on
appeal and must base our assessment in light of the arguments, information, and evidence that was
available to the trial court at the time it ruled. Dragoo v. State, 96 S.W.3d 308, 313 (Tex. Crim.
App. 2003). Because there were no arguments or evidence before the trial court in support of the
motion for speedy trial, we must overrule this point of error.

 Even considering the merits of Hill's speedy trial claim, the claim must fail.

 "The Sixth Amendment to the United States Constitution guarantees the accused's right to
a speedy trial." Zamorano v. State, 84 S.W.3d 643, 647 n.5 (Tex. Crim. App. 2002) (citing Barker
v. Wingo, 407 U.S. 514, 515 (1972); Dickey v. Florida, 398 U.S. 30, 37 (1970); Smith v. Hooey, 393
U.S. 374, 377-78 (1969); Klopfer v. N. Carolina, 386 U.S. 213, 223 (1967)); State v. Fisher, 198
S.W.3d 332, 336 (Tex. App.--Texarkana 2006, pet. ref'd). "In addition, Article I, § 10 of the Texas
Constitution guarantees the accused in all criminal prosecutions the right to a speedy and public
trial." Zamorano, 84 S.W.3d at 647 n.6; Fisher, 198 S.W.3d at 336.

 When faced with a claim that an appellant's speedy trial right has been abridged, we are to
evaluate, under the totality of the circumstances, Barker's four-part test: "the length of the delay, the
State's reason for delay, whether the delay was due to lack of diligence on the part of the State, and
whether the delay caused harm to the accused." Fisher, 198 S.W.3d at 336; Ex parte Martin, 33
S.W.3d 843, 845 (Tex. App.--Austin 2000), pet. dism'd, improvidently granted, 46 S.W.3d 932
(Tex. Crim. App. 2001); see also Shaw v. State, 117 S.W.3d 883, 888-89 (Tex. Crim. App. 2003). 
Based on the facts of the case, we assign varying weights to the Barker factors, and determine
whether, taken together, they weigh either for or against finding a speedy trial violation. Fisher, 198
S.W.3d at 337. We also note that "[n]o one factor possesses talismanic qualities . . . ." Zamorano,
84 S.W.3d at 648 (quoting Barker, 407 U.S. at 533).

 In our review, we defer to the trial court in its evaluation of factual issues and in drawing
inferences from the facts. Kelly v. State, 163 S.W.3d 722, 726-27 (Tex. Crim. App. 2005). We
review legal questions de novo. Johnson v. State, 954 S.W.2d 770, 771 (Tex. Crim. App. 1997). 
The balancing test as a whole is purely a legal question. Id. We are to review the trial court's ruling
on a motion to dismiss for want of a speedy trial in light of the arguments, information, and evidence
that was available to the trial court at the time it ruled. Shaw, 117 S.W.3d at 889; Dragoo, 96
S.W.3d at 313. And, the appellate court must uphold the trial court's ruling if it is supported by the
record and is correct under the applicable law. Shaw, 117 S.W.3d at 889; State v. Munoz, 991
S.W.2d 818, 821 (Tex. Crim. App. 1999).

 (a) The Length of the Delay

 We measure the delay from the defendant's arrest or formal accusation. Shaw, 117 S.W.3d
at 889 (citing United States v. Marion, 404 U.S. 307, 313 (1971)). Because this delay of
approximately eleven years is presumptively prejudicial, the Barker inquiry would be clearly
triggered. See Barker, 407 U.S. at 530; see also State v. Owens, 778 S.W.2d 135, 136-38 (Tex.
App.--Houston [1st Dist.] 1989, pet. ref'd) (seven-month delay established prima facie showing).

 Between the date of the indictment and the date of Hill's failure to appear, approximately
seventeen months elapsed, Hill being incarcerated for only two of those months. Thereafter, for a
period of approximately eight years and five months, Hill had absented himself and was not located. 
During that time, he suffered no incarceration connected with this case. Two months later came the
initial recusal motion, followed seven months after that by the second motion to appoint a county
attorney pro tem and the trial on Hill's related charge for failure to appear. Then, two months elapsed
before Hill filed his motion for speedy trial, which was heard by the trial court approximately two
and one-half months thereafter. From the time the trial court was made aware of the delays and
granted the motion for speedy trial, only two more weeks elapsed before trial.

 In summary, of the approximately 132 months of delay between Hill's indictment and his
trial, Hill was incarcerated for sixteen months, legally free from custody for fifteen months, and
absent without permission for 101 months. We weigh this factor moderately against the State.

 (b) The State's Reason for the Delay

 The second factor we consider is the justification the State offers for the delay. Barker, 407
U.S. at 531; Zamorano, 84 S.W.3d at 648, 649-50. During the thirty-one months Hill was either
incarcerated or properly bonded out of custody, there were two motions to change the attorney
representing the State in this case and a trial on Hill's related charge of failure to appear. Then, of
course, there was the substantial hiatus--101 months--during which Hill's location was not known. 
There are numerous factors justifying the significant delay. While admittedly the record is not well
developed here due to the trial court's quick grant of a speedy trial without much of a hearing, the
State was not given an opportunity to provide its reasons for delay at the hearing. We weigh the
record on this factor slightly in favor of the State.

 (c) Hill's Assertion of His Speedy Trial Right

 Next, we consider the timeliness of Hill's assertion of his right to a speedy trial. Barker, 407
U.S. at 529, 531-32; Zamorano, 84 S.W.3d at 648, 651-52. Hill filed his motion for speedy trial
after approximately 129 months had passed following his indictment, and approximately three
months before his trial. Even then, he did not urge the motion to the trial court, but waited for the
trial court to raise it at a hearing set for another purpose. And, at that hearing, Hill provided no
evidence and made little or no argument in support of his speedy trial motion. We weigh this factor
heavily against Hill.

 (d) Prejudice Caused by the Delay

 The final factor we consider is the extent to which there is evidence Hill was prejudiced by
the State's delay. See Barker, 407 U.S. at 531-32; Zamorano, 84 S.W.3d at 648, 652-54. "Prejudice
. . . should be assessed in the light of the interests of defendants which the speedy trial right was
designed to protect": "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and
concern of the accused; and (iii) to limit the possibility that the defense will be impaired." Barker,
407 U.S. at 532. Impairment of the defense is the most important of the three interests "because the
inability of a defendant adequately to prepare his [or her] case skews the fairness of the entire
system." Id.

 Aside from approximately sixteen months of incarceration, much of which could also be
attributed to Hill's other charge (failure to appear), there is no evidence of prejudice. We weigh this
factor moderately against Hill.



 (e) Weighing the Barker Factors

 After individually assessing the four Barker factors, we consider them in the aggregate, along
with any other relevant circumstances known to us. Id. at 533; Zamorano, 84 S.W.3d at 648,
654-55. We evaluate the strength of each Barker factor and balance the respective strengths of those
factors against the relative weights of the remaining factors "in light of the conduct of both the
prosecution and the defendant." Zamorano, 84 S.W.3d at 648; see also Barker, 407 U.S. at 530. 
While the delay was extensive, the vast majority of that delay was caused by Hill's absenting himself. 
The record contains a number of elements tending to justify much of the other delay. Hill asserted
the right only at the last minute, only gently, and was granted a trial promptly thereafter. No
prejudice appears other than incarceration, much of which is also attributable to another charge.

 Hill was not denied his right to a speedy trial.

 We affirm the judgment of the trial court.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: October 11, 2006

Date Decided: January 11, 2007


Publish
1. For clarity, we will refer to Terrell Hill by his first name. Appellant Brian Hill will be
referenced by use of his last name.
2. Earlier that afternoon, J. B. had agreed to meet with Sanders that evening. J. B. testified
that, during the earlier conversation, Sanders had suggested that J. B. have sex with him and with
some male friends of his that night but, in varying testimony, J. B. told Sanders she did not want to
do that, or she would think about it, or "whatever." After going to the movies that evening, J. B. and
a girlfriend met Sanders outside the theater and entered a car with Sanders, Hill, and Terrell. The
car was owned and driven by Hill. After taking J. B.'s girlfriend directly home at her request, the
four stopped at a gasoline station to "fill up" the car, at which time Sanders gave J. B. a quarter and
directed her to call her parents to tell them she was running errands with her girlfriend's sister and
would be home as soon as she was finished--admittedly a false story. After J.Â B. completed the call,
the four proceeded to a residence owned by Hill and Terrell's mother, who was known to be at work
at the time. There, the three men pursued their desires against J. B.
3. Hill does not argue that the written order contains insufficient information to make it a valid
order, but asserts simply that the oral and written cumulation orders are at fatal variance. In citing
cases with vague oral pronouncements, Hill inserts the element of vagueness into this point of error.
4. The Texas Court of Criminal Appeals recommends that a cumulation order identify the prior
conviction onto which a new sentence is being stacked, by providing five pieces of information about
that prior conviction: (1) the trial court case number, (2) the name of the trial court, (3) the
conviction date, (4) the length of the sentence, and (5) the offense. Williams v. State, 675 S.W.2d
754, 764 (Tex. Crim. App. 1984); Ward v. State, 523 S.W.2d 681 (Tex. Crim. App. 1975). But
omitting one or more of those will not invalidate a cumulation order if the remaining identification
of the prior conviction is sufficiently specific to give notice, both to the defendant and to the Texas
Department of Corrections, of the base sentence onto which the new sentence is being stacked. 
Williams, 675 S.W.2d at 764. Here, the written order contained four of the five elements and, thus,
was sufficient. Hill does not claim otherwise.

5. The trial court's comments during the hearing suggest that September 26 was the first time
the trial court became aware of the existence or age of the case.