**Opinion filed December 19, 2014**



# In The

# Eleventh Court of Appeals

_____

## No. 11-12-00325-CR

_____

## HUMPHREY BROCK, JR., Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 104th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 17983B**

## M E M O R A N D U M   O P I N I O N

The jury convicted Appellant, Humphrey Brock, Jr., of the offense of possession of a controlled substance, cocaine, in an amount of more than one gram but less than four grams, with the intent to deliver in a drug-free zone. Appellant elected to have the trial court assess punishment, and the trial court found two enhancement allegations to be true. The trial court assessed Appellant's punishment at confinement for life. When the trial court sentenced Appellant, it

ordered that the sentence in this case was to run consecutively to the sentence in a previous conviction. Appellant asserts five issues on appeal. We affirm.

## I. *The Charged Offenses*

The grand jury indicted Appellant for knowingly possessing a controlled substance, cocaine, in an amount of less than four grams but more than one gram within 1,000 feet of a playground, namely Stevenson Park. Appellant was also indicted for the same offense in the same location but with the intent to deliver. TEX. HEALTH & SAFETY CODE ANN. § 481.134(b) (West Supp. 2014). The State sought to enhance Appellant's punishment with two prior felony convictions. As enhanced in this case, the applicable punishment range was confinement for thirty years up to ninety-nine years, or life, which included five additional years added to the minimum range for the drug-free zone finding. *Id.* § 481.134(c); TEX. PENAL CODE ANN. § 12.42(d) (West Supp. 2014). Appellant pleaded "not guilty" and proceeded to trial.

## II. *Evidence at Trial*

Appellant has not challenged the sufficiency of the evidence, and we outline only the facts pertinent to his appeal. Chad Jenkins, an undercover agent with the Abilene Police Department, observed Appellant driving a white Lincoln Town Car on Treadaway Street and saw him change lanes without signaling. Agent Jenkins and Derrick Franklin, also an Abilene Police Department undercover agent, were in an unmarked police vehicle; they began to follow Appellant and requested that officers in a marked police unit stop Appellant for the traffic violation. Agent Jenkins saw Appellant drive into Stevenson Park, and he followed Appellant into the park. When a marked unit did not arrive, Agent Jenkins drove up to Appellant's vehicle after Appellant parked in the parking lot of the park.

Agent Franklin testified that he rode with Agent Jenkins and that both of them observed Appellant change lanes without signaling. Agent Franklin said that

2

they requested that officers in a marked unit stop Appellant but that, when the unit did not arrive in time, they followed Appellant into Stevenson Park and stopped Appellant after he parked. Agent Jenkins asked Appellant for his driver's license and proof of insurance, and although Appellant had a driver's license, he did not have any proof of insurance or financial responsibility.

While Agent Jenkins was issuing Appellant a citation for no insurance, Agent Ismael Jaimes and his police dog, "Chavo," arrived, as did another marked police patrol unit. Immediately upon arrival, and before Agent Jenkins had finished issuing the citation, Agent Jaimes had Chavo complete an open-air sniff around Appellant's vehicle; Chavo alerted to the driver's side door. During a subsequent search of the vehicle, officers discovered what appeared to be crack cocaine in a cup holder and marihuana in the console.

Agent Franklin corroborated Agent Jenkins's account of the encounter with Appellant and said that, after Chavo alerted on the driver's side of Appellant's vehicle, they asked Appellant if he had anything on him. Appellant responded that he had marihuana in the vehicle. Agent Franklin patted Appellant down for weapons, found none, found no other contraband, and found $343 in cash. Agent Franklin said that he assisted Agent Jaimes in the vehicle search, during which they found marihuana and what appeared to be two grams of crack cocaine; Agent Franklin said that they did not locate any drug paraphernalia in the vehicle. They arrested Appellant.

Agent Jenkins informed Appellant of his *Miranda*[1] rights. Appellant appeared to understand those rights, spoke to Agent Jenkins, and never indicated that he wanted to terminate the interview. During a custodial interview in Agent Jenkins's office, Appellant, who was not handcuffed at the time, said that he sold crack cocaine in Abilene and several surrounding cities and that he made about

[1]*Miranda v. Arizona*, 384 U.S. 436 (1966).

$3,000 to $4,000 a month selling cocaine. Agent Jenkins did not make an audio or video recording of the interview.

William Chandley, a chemist employed by the Texas Department of Public Safety in the Abilene crime lab, received the alleged controlled substance that was found in Appellant's vehicle. Chandley testified that he tested the substance and determined that it was 2.17 grams of crack cocaine.

## III. *Issues Presented*

Appellant presents five issues on appeal. First, Appellant asserts that the trial court erred when it denied Appellant's Motion to Set Aside the Indictment because of an alleged speedy trial violation. Second, Appellant argues that the trial court erred when it denied his motion to suppress evidence. Third, Appellant asserts that the trial court erred when it admitted evidence of his extraneous offenses. Fourth, Appellant asserts that the trial court impermissibly imposed a disproportionate sentence when it sentenced him to confinement for life and ordered that the sentence run consecutively to a prior conviction. Finally, Appellant asserts that the trial court erred when it refused to hear evidence at the motion for new trial hearing and when it denied his motion for new trial.

## IV. *Analysis*

### A. *Issue One: Alleged Speedy Trial Violation*

Appellant alleges that he was denied a speedy trial. The Sixth Amendment affords all criminal defendants the right to a speedy trial. U.S. CONST. amend. VI. This right was made applicable to state criminal prosecutions by the Due Process Clause of the Fourteenth Amendment. *Klopfer v. North Carolina*, 386 U.S. 213, 223 (1967). The speedy trial right attaches when a person is arrested or charged. *United States v. Marion*, 404 U.S. 307, 320 (1971). The only possible remedy for a violation of the right to a speedy trial is to dismiss the prosecution. *Strunk v. United States*, 412 U.S. 434, 440 (1973).

4

To determine whether an accused has been denied his right to a speedy trial, courts balance the conduct of both the prosecution and the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003). We apply the *Barker* factors to evaluate (1) the length of the delay, (2) the reason for the delay, (3) whether the defendant asserted his speedy trial right, and (4) the prejudice caused by the delay. *Barker*, 407 U.S. at 530. No single factor is necessary or sufficient to establish a violation of the right to a speedy trial. *Id.*; *Dragoo*, 96 S.W.3d at 313.

"While the State has the burden of justifying the length of delay, the defendant has the burden of proving the assertion of the right and showing prejudice." *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008) (footnote omitted) (citing *Barker*, 407 U.S. at 531; *Ex parte McKenzie*, 491 S.W.2d 122, 123 (Tex. Crim. App. 1973)). "The defendant's burden of proof on the latter two factors 'varies inversely' with the State's degree of culpability for the delay." *Id.* (quoting *Robinson v. Whitley*, 2 F.3d 562, 570 (5th Cir. 1993)). "Thus, the greater the State's bad faith or official negligence and the longer its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial." *Id.* at 280–81.

A speedy trial claim is triggered by a passage of time that is unreasonable enough under the circumstances to be "presumptively prejudicial." *Barker*, 407 U.S. at 530. Post-accusation delay that approaches one year "marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry." *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992). Once triggered, courts analyze a "speedy-trial claim by first weighing the strength of each of the *Barker* factors and then balancing their relative weights in light of 'the conduct of both the prosecution and the defendant.'" *Cantu*, 253 S.W.3d at 281 (quoting *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002) (quoting *Barker*, 407 U.S. at

5

530)).  These factors have no "'talismanic qualities,' thus courts must 'engage in a difficult and sensitive balancing process.'"  *Zamorano*, 84 S.W.3d at 648 (quoting *Barker*, 407 U.S. at 533).

We review the trial court's ruling on a speedy trial issue under a bifurcated standard of review.  *Id.*  As in the context of a motion to suppress, we review legal issues de novo, but we defer to the trial court's resolution of factual issues.  *Kelly v. State*, 163 S.W.3d 722, 726 (Tex. Crim. App. 2005).  We view all of the evidence in the light most favorable to the trial court's ultimate ruling.  *Zamorano*, 84 S.W.3d at 648.  Under this standard, we defer not only to a trial court's resolution of disputed facts, but also to the reasonable inferences drawn from those facts.  *Kelly*, 163 S.W.3d at 726.  "Although the trial court deserves deference even when credibility is not in issue, deference is especially appropriate when credibility is involved."  *Id.* at 727.  In fact, "the factfinder is empowered, on the basis of credibility and demeanor evaluations, to completely disregard a witness's testimony, even if that testimony is uncontroverted."  *Id.* (citing *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000)).

Appellant was indicted in February 2011, and fifteen months later, in May 2012, his trial began.  We note that, on February 23, 2011, Appellant filed a motion to waive arraignment, requested discovery, and requested trial.  A delay of more than a year is sufficient to trigger an inquiry, and the length of delay is measured from the time the defendant is arrested or formally accused.  *Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003).  Appellant's trial date was reset twice in 2011, and this fact weighs in Appellant's favor on the first factor.

But on the second factor, the reason for the delay weighs against him because he had been on a hold in Eastland County, as well as other counties, on several criminal charges.  The hold in Eastland County continued until March 2012,  and earlier, when Appellant went to trial in another cause, in Taylor County,

6

he was convicted in July 2011 and sentenced a month later. This second factor also weighs against Appellant because he did not seek a bench warrant for a trial in Taylor County in this case and because the State did not delay the case because it was not ready for trial. And, because Appellant did not demand a speedy trial following the reset trial dates in 2011, the third factor is neutral or weighs against Appellant. *See Ervin v. State*, 125 S.W.3d 542, 546–47, 549 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

Finally, Appellant has not shown prejudice where he was already incarcerated because of a prior conviction in 2011 and was on hold for other charges in other counties, and he has failed to show that his pretrial incarceration caused him anxiety and concern or impaired his defense due to missing witnesses or other similar issues. *Shaw*, 117 S.W.3d at 891; *Tucker v. State*, 751 S.W.2d 919, 922 (Tex. App.—Fort Worth 1988, pet. ref'd). We overrule Appellant's first issue.

### B. Issue Two: Motion to Suppress Evidence

Appellant asserts that the trial court erred when it admitted evidence collected from the search of his vehicle. We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011); *Lujan v. State*, 331 S.W.3d 768, 771 (Tex. Crim. App. 2011). In reviewing a ruling on a motion to suppress, we apply a bifurcated standard of review. *Martinez*, 348 S.W.3d at 922–23; *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010). We afford almost total deference to the trial court's determination of historical facts and of mixed questions of law and fact that turn on the weight or credibility of the evidence. *Martinez*, 348 S.W.3d at 922–23; *Lujan*, 331 S.W.3d at 771. We review de novo the trial court's determination of pure questions of law and mixed questions of law and fact that do not depend on credibility determinations. *Martinez*, 348 S.W.3d at 923. When the issue has been

relitigated during the trial on the merits, the appellate court may consider evidence introduced at the trial. *Arizpe v. State*, 308 S.W.3d 89, 91 (Tex. App.—San Antonio 2010, no pet.).

Appellant asserts that the police had no probable cause to stop or question him in the park. But Agent Jenkins testified that he observed Appellant commit a traffic violation: changing lanes without signaling. The police had reasonable suspicion to stop Appellant because they observed a traffic violation. *State v. Elias*, 339 S.W.3d 667, 674–75 (Tex. Crim. App. 2011) (law enforcement officers may lawfully stop a motorist who commits a traffic violation); *see also Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992).

Agents Jenkins and Franklin testified that Appellant was unable to provide proof of insurance or financial responsibility, which was a second violation. *See* Tex. Transp. Code Ann. §§ 601.051, 601.191 (West 2011), § 601.053 (West Supp. 2014). During this time, the marked patrol unit arrived, and Agent Jaimes's K-9 unit also arrived. Agent Jaimes's drug dog performed an open-air sniff while Agent Jenkins cited Appellant for the lack of insurance, and contemporaneously, the drug dog alerted to the presence of drugs on the driver's side of the car. In the ensuing search of the vehicle, the officers found drugs.

Appellant argues that the canine sniff was unreliable and did not provide probable cause for the search of his vehicle. Appellant cites *Florida v. Harris*, 133 S.Ct. 1050 (2013), for support of his argument. In *Florida v. Harris*, the United States Supreme Court held that "evidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert." *Id.* at 1057. The Supreme Court also noted that, "[i]f a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search." *Id.* And the same would be true, absent

formal certification, "if the dog has recently and successfully completed a training program that evaluated his proficiency in locating drugs." *Id.* For it is in law enforcement's interest to have a trained dog that accurately detects contraband. *Id.*

Appellant argues that, because Chavo was given a rubber ball as a reward each time that he alerted and was not given a reward when he did not alert, Chavo was conditioned to always alert. But Agent Jaimes testified that he was certified as a K-9 officer and that Chavo, who was his second working dog, was certified to detect the presence of illegal narcotics, including marihuana, cocaine, heroin, ecstasy, and methamphetamine. Agent Jaimes said that he does monthly training on illegal-narcotics detection with annual certification and that he and Chavo have to take and pass a final exam to be certified. Chavo and he have worked together for three years, and Chavo conducts open-air sniffs on a frequent basis, which Agent Jaimes said could be multiple times a day. Agent Jaimes follows the same procedure for each open-air sniff; he starts Chavo at the license plate and does one to three counterclockwise circuits around the vehicle. Chavo is trained to do a passive alert, which means that Chavo sits and tenses up when he smells illegal narcotics. Agent Jaimes also reported that Chavo gets a rubber ball as a reward when he alerts but does not get one when he does not alert.

In this case, Chavo started at the license plate of Appellant's vehicle, worked counterclockwise, and alerted on the first circuit when he reached the driver's door. The accuracy of Chavo's sniff was immediately confirmed by Appellant when he acknowledged that he had marihuana in his vehicle. Accordingly, the trial court did not err when it denied Appellant's motion to suppress evidence obtained through the stop and eventual search of Appellant's car because the State adduced evidence that Chavo was a trained and certified dog that accurately alerted to drugs, the presence of which was confirmed by Appellant. We overrule Appellant's second issue.

9

## C. Issue Three: Admission of Evidence of Extraneous Offenses

Appellant asserts that the trial court erred when it admitted Appellant's statements, made in police custody, about the source of the $343 found in his pockets. A trial court's ruling on the admission of extraneous offense evidence is reviewed under an abuse of discretion standard. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). We also review the trial court's admission of prior convictions under an abuse of discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010); *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005). As long as the trial court's ruling is within the zone of reasonable disagreement, there is no abuse of discretion, and we will uphold the ruling. *De La Paz*, 279 S.W.3d at 343–44. A trial court's ruling is within this zone if the evidence shows that (1) an extraneous transaction is relevant to a material, non-propensity issue and (2) the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *Id.* at 344.

Appellant did not testify, but his defensive theory at trial was that the police were not acting on a tip about him and that he was in the park for recreational activity, not for the purpose of illegally selling drugs. The State argued that Appellant's counsel attempted to leave a false impression of Appellant's presence or purpose in the park because the police admitted they had not received any specific tips about Appellant or his vehicle on the day of the stop, although Stevenson Park is known as a place where drugs are illegally bought and sold. In fact, Appellant had told Agent Jenkins not only that the drugs were his but also that the money that he had in his pockets came from his business of selling drugs.

The State offered evidence of the statements that were made by Appellant during the interview. Even though Agent Jenkins did not complete an audio or video recording of the interview as required by Article 38.22 of the Texas Code of

10

Criminal Procedure, the trial court admitted the statements. Generally, the State may not use a statement gathered during interrogation when the State has failed to follow Article 38.22. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 (West Supp. 2014); *Hollis v. State*, 219 S.W.3d 446, 469–70 (Tex. App.—Austin 2007, no pet.). In *Hollis*, the court held that, where proper *Miranda* warnings were given but the requirements of Article 38.22 were not complied with, the trial court commits a nonconstitutional error if it admits the evidence. *Hollis*, 219 S.W.3d at 469–70.

The trial court should not have admitted the statements that Appellant made to Officer Jenkins about the source of the money that Appellant had in his pockets. We will review that error to determine whether the error constitutes harm. Under Rule 44.2(b) of the Texas Rules of Appellate Procedure, if Appellant's substantial rights were affected and there was a substantial or injurious effect on the jury's verdict, then harm has occurred. *Nonn v. State*, 117 S.W.3d 874, 880 (Tex. Crim. App. 2003). Where the effect or influence on the jury is slight, there is no harm. *Id.* In *Motilla v. State*, 78 S.W.3d 352, 359 (Tex. Crim. App. 2002), the Texas Court of Criminal Appeals held that we are to consider the properly admitted evidence of guilt. We also are to consider the character of the alleged error and how it might be considered in connection with the properly admitted evidence. 78 S.W.3d at 359.

The State adduced evidence at trial that Appellant's vehicle contained drugs, that he was the only person in the vehicle, that Appellant had no physical indications that he used crack cocaine, and that the amount of drugs found—and the packaging—was typical of a seller and not a user. Appellant was also followed and stopped for a traffic violation after he entered a park that was notorious as a place used for illegal drug activity. The police found $343 in cash in Appellant's pockets. In light of this evidence, the improperly admitted evidence about the

source of the money that Appellant had in his pockets had only a slight effect on the jury. We overrule Appellant's third issue.

### D. Issue Four: Allegation of Disproportionate Sentence

Appellant argues that his sentence is grossly disproportionate to the offense. As a general rule, punishment is not cruel and unusual if it falls within the range of punishment established by the legislature. *Dale v. State*, 170 S.W.3d 797, 799 (Tex. App.—Fort Worth 2005, no pet.). Here, Appellant was convicted of the first-degree felony of possession of a controlled substance with intent to deliver in a drug-free zone. *See* HEALTH & SAFETY § 481.112 (West 2010), § 481.134(b) (West Supp. 2014). An exception to the general rule exists for a sentence that falls within the statutory range for the crime but is grossly disproportionate to the crime. *Solem v. Helm*, 463 U.S. 277, 290 (1983); *Dale*, 170 S.W.3d at 799. A prohibition against grossly disproportionate punishment survives under the U.S. Constitution apart from any consideration of whether the punishment assessed is within the statute's range. *Delacruz v. State*, 167 S.W.3d 904, 906 (Tex. App.—Texarkana 2005, no pet.). However, the Supreme Court has recognized that "[o]utside the context of capital punishment, *successful* challenges to the proportionality of particular sentences [will be] exceedingly rare." *Solem*, 463 U.S. at 289–90 (alterations in original) (quoting *Rummel v. Estelle*, 445 U.S. 263, 272 (1980)).

In a proportionality analysis, we first make a threshold comparison of the gravity of an appellant's offense against the severity of his sentence. *Dale*, 170 S.W.3d at 799–800. We consider the gravity of the offense in light of the harm caused or threatened to the victim or society and the culpability of the offender. *Dale*, 170 S.W.3d at 800; *Alvarez v. State*, 63 S.W.3d 578, 581 (Tex. App.—Fort Worth 2001, no pet.). Only if we infer that the sentence is grossly disproportionate to the offense will we then compare the sentence received to sentences imposed for

12

similar crimes in Texas and sentences imposed for the same crime in other jurisdictions. *Solem*, 463 U.S. at 292; *Dale*, 170 S.W.3d at 800.

As enhanced, the punishment range for Appellant's conviction of possession of a controlled substance with intent to deliver in a drug-free zone was confinement for thirty to ninety-nine years or life. Appellant's extensive criminal history and prior convictions for murder, assault with attempt to murder, and various drug offenses were described in detail during the punishment phase of the trial. The trial court assessed punishment within the applicable range, and given Appellant's lengthy criminal history, we cannot say that the trial court abused its discretion in assessing punishment at confinement for life.

Punishment that is increased under the drug-free zone statute may not run concurrently with punishment for a conviction under any other criminal statute; cumulation is mandatory. HEALTH & SAFETY § 481.134(h); *Ex parte Knight*, 401 S.W.3d 60, 63 (Tex. Crim. App. 2013). But in Appellant's case, his prior conviction in Cause No. 17957-B, upon which the current sentence was stacked, was for an offense contained within the drug-free statute. In this situation, cumulation is discretionary. *Ex parte Knight*, 401 S.W.3d at 63 (citing HEALTH & SAFETY § 481.134(h) and TEX. CODE CRIM. PROC. ANN. art. 42.08 (West Supp. 2014)). As long as the trial court complies with statutory requirements, the court has absolute discretion to cumulate sentences. *See Smith v. State*, 575 S.W.2d 41, 41–42 (Tex. Crim. App. [Panel Op.] 1979) (holding cumulation proper because statutory prohibitions did not apply); *Carney v. State*, 573 S.W.2d 24, 27 (Tex. Crim. App. 1978) ("There is no 'right' to a concurrent sentence; whether punishment will run concurrently or cumulatively is within the discretion of the trial judge."). Because the legislature vested the trial court with discretion to order consecutive sentences, we review that decision for an abuse of discretion. *Banks v. State*, 503 S.W.2d 582, 587 (Tex. Crim. App. 1974). The trial court was not

required to stack the sentence on top of Appellant's sentence for a prior conviction but did not abuse its discretion when it did so. We overrule Appellant's fourth issue.

### E. Issue Five: Denial of Motion for New Trial

Appellant asserts that the trial court erred when it refused to hear evidence in the motion for new trial hearing about the alleged bias of a juror, Micki Larson-Olson, and then denied the motion. We review a trial court's denial of a motion for new trial under an abuse of discretion standard. *Keeter v. State*, 74 S.W.3d 31, 37 (Tex. Crim. App. 2002). When applying an abuse of discretion standard, we will not overturn a trial court's decision unless it falls outside the zone of reasonable disagreement. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).

Two witnesses testified at the hearing on the motion for new trial. First, Larson-Olson, a juror, testified that her personal experiences with her son on his use of drugs did not affect her deliberations in this case. Second, Deputy Bryce Channell testified that he could not serve Catherine Carr, a juror, with a subpoena. The trial court then continued the hearing, and when the hearing resumed, Appellant's counsel explained that he could not locate Carr. Appellant has failed to prove that Larson-Olson had any bias or prejudice; on the contrary, the evidence adduced indicated the opposite. In addition, there was no evidence adduced that Carr would have testified that Larson-Olson had any bias or prejudice against Appellant. We overrule Appellant's fifth issue.

## V. *This Court's Ruling*

We affirm the judgment of the trial court.

MIKE WILLSON

JUSTICE

December 19, 2014

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.