

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| JESSE SANCHEZ, | § | |
| | | No. 08-15-00059-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | Criminal District Court No. 1 |
| THE STATE OF TEXAS, | § | |
| | | of Tarrant County, Texas |
| Appellee. | § | |
| | | (TC# 1090997D) |
| | § | |

## **O P I N I O N**

Appellant Jesse Sanchez pleaded guilty to one count of sexual assault, a second degree felony, and was sentenced to a 30-year prison term.  On appeal, Appellant contends the trial court erred in denying his pretrial motion to dismiss based on a speedy trial violation.  We affirm.[1]

### **BACKGROUND**

The parties agree that the victim in this case was sexually assaulted by two men in the back of a taxicab on January 18, 2004.  No suspects were initially identified, but DNA was recovered after the assault during an examination by a Sexual Assault Nurse Examiner.  In April 2006, Appellant was convicted and sentenced to eight years in prison on a felony drug charge in an unrelated matter and was placed in the custody of the Texas Department of Criminal Justice in

---

[1] This appeal was transferred from the Fort Worth Court of Appeals, and we apply the precedent of that Court to the extent required by TEX. R. APP. P. 41.3.

Huntsville. Thereafter, in November 2007, Appellant was identified as a possible suspect in the sexual assault case when his DNA was matched to the DNA found during the SANE examination.

On March 4, 2008, Appellant was indicted on two counts of sexual assault. That same day, the indictment was served on Appellant in prison, and the State announced ready for trial. Appellant acknowledged that he was "arrested" on the sexual assault warrant while in prison, and the parties agree that this first arrest occurred in March 2008.[2]

Neither Appellant nor the State took any additional action in the case for the next 5-1/2 years until Appellant's release from prison in December 2013. Upon his release, Appellant was arrested on the warrant for the sexual assault charge a second time. Appellant made his initial appearance in court on December 26, 2013, and filed an affidavit of indigency along with a request that an attorney be appointed to represent him. The trial court appointed an attorney to represent Appellant that same day, and on May 20, 2014, the court appointed a private investigator to assist Appellant in the preparation of his defense. Between February and December 2014, the parties engaged in discovery and plea negotiations, and both parties filed various motions in preparation for trial.[3]

Trial was originally set for July 28, 2014, but the State filed a motion for a continuance on July 17, 2014, asserting that the witness who conducted the DNA testing was scheduled to be out

---

[2] There is an indication in the record that a complaint was filed and a warrant was issued for Appellant's arrest on November 16, 2007, and that the Tarrant County Sheriff's Department transmitted a copy of the arrest warrant to TDJC, requesting that the warrant be placed as a "detainer" and that TDCJ notify the Sheriff's Department when Appellant was "ready for release[.]"

[3] Among other things, the State filed a "Brady Disclosure" on December 18, 2014, advising Appellant that the prosecutor had met with a detective who had investigated the case "several years" ago. The Brady Disclosure indicated that after the State had received the DNA analysis identifying Appellant as a possible suspect, the victim was unable to identify Appellant as her assailant in a photo lineup. The Disclosure also contained an e-mail from the prosecutor to Appellant's attorney indicating that the detective had a file that included photographs, as well as his "research on the taxi cabs and drivers in Fort Worth."

of the country during the week of the trial. There is nothing in the record to indicate that Appellant opposed the motion, and the trial court granted the motion that same day.

## Appellant's Motion for Speedy Trial and Motion to Dismiss

The record does not indicate that Appellant thereafter sought a new trial date until December 23, 2014, when he filed a motion for speedy trial, together with a "motion to dismiss for speedy trial violation," requesting that he either be granted a speedy trial or that the indictment be dismissed based on the delays that had occurred in setting his case for trial. Appellant contended that the State's approximate seven-year delay in bringing the case to trial after his first arrest was presumptively and inherently prejudicial to the preparation of his defense, and that the State had no reason for the excessive delay. Appellant asserted that "numerous potential witnesses to the events in question," who Appellant believed could provide exculpatory evidence, were "undiscoverable" at that late date. Appellant further argued that "[w]ith such an extreme passage of time, memories of those witnesses who are available may have faded." Appellant did not disclose the identity of any potential witnesses in his motion, nor did he provide any indication of how or why he believed those witnesses would have provided exculpatory evidence if they had been afforded the opportunity to testify earlier.

At the hearing on Appellant's motion to dismiss, a witness from the district clerk's office testified that there was nothing in the clerk's file indicating that Appellant had asserted his right to a speedy trial prior to filing his motions on December 23, 2014. The clerk testified that there was no correspondence in the record to indicate that Appellant had attempted to communicate with the court or the district attorney's office regarding his sexual assault case while he was in prison, or that he sought to be bench-warranted back to Tarrant County to stand trial during that time. The

3

clerk acknowledged that Appellant did not have an attorney representing him in the sexual assault case before his release from prison in December 2013. The State did not present any evidence to explain the delay in bringing Appellant's case to trial.

Appellant presented his court-appointed private investigator, who testified that he began his investigation in July 2014 shortly after his appointment by the court. The investigator visited two bars in the Fort Worth Stockyard area where Appellant claimed to have been on the evening of the offense in 2004. At the first bar, the investigator learned that none of the current employees were employed there at the time of the offense, and that the management of the bar had "changed . . . completely." The investigator was not able to obtain the names of any of the former employees. Further, the current manager of the first bar advised the investigator that she would not provide the former manager's contact information, but the investigator left his card in hopes she would get back to him. The investigator testified that the former manager never contacted him.

At the second bar, the investigator was able to speak with one employee who had been employed there in 2004, but the employee had trouble remembering what happened on the night of the offense and was not even sure she had been working that night. The investigator did not testify regarding any other attempts to contact other employees of the second bar.

The investigator also testified that he unsuccessfully attempted to contact the victim, but acknowledged that he did not attempt to contact the victim's friends who had been listed in the police report as having been with the victim the evening of the offense, or any of the other potential witnesses listed in the report. The investigator also testified that he attempted to obtain "video evidence" from businesses in the Stockyard area where the offense occurred, but only one of the

4

bars had video cameras, and the bar employees advised him that they did not keep video footage "that long."

Appellant claimed that he had been prejudiced in his ability to prepare an adequate defense by the State's delay in bringing his case to trial, arguing broadly that it was impossible to track down any witnesses at that late date, and that "[a]ny number of other witnesses," including those who might have observed Appellant at the bar at the time of the alleged offense, have been "lost by the lengthy delay in appointing an attorney and setting the case for trial." The State argued that all of the witnesses, including the victim and the other witnesses listed in the original police report, were alive and available for trial, but that Appellant's investigator had failed to exercise due diligence in tracking down and contacting those witnesses. The State also pointed out that Appellant had failed to assert his speedy-trial right throughout the entire period of the seven-year delay, despite having been informed of the pending sexual assault charge as early as March 2008. The trial court orally denied Appellant's motion to dismiss, expressly finding that "any delay that occurred in this cause number being brought to trial did not prejudice the rights of the Defendant."

Shortly thereafter, Appellant entered into a plea bargain agreement with the State, and agreed to plead guilty to one count of enhanced second-degree felony sexual assault. That same day, the trial court entered a judgment of conviction pursuant to Appellant's plea and sentenced Appellant to a thirty-year prison term as recommended by the State. The trial court certified Appellant's right to appeal the denial of his pretrial motion to dismiss.

## DISCUSSION

In a single issue, Appellant contends the trial court erred in denying his motion to dismiss, arguing that his right to a speedy trial was violated by the State's delay in bringing his case to trial,

5

and claiming that this lengthy delay prejudiced his ability to investigate and present an adequate defense.

## Applicable Law and Standard of Review

Both the Sixth Amendment to the United States Constitution and Article 1, Section 10 of the Texas Constitution guarantee an accused the right to a speedy trial. *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; *see also Zamorano v. State*, 84 S.W.3d 643, 647 (Tex.Crim.App. 2002); *Orand v. State*, 254 S.W.3d 560, 565 (Tex.App. – Fort Worth 2008, pet. ref'd). Texas analyzes claims of a denial of the right to a speedy trial by weighing and balancing the four factors set out by the United States Supreme Court in *Barker v. Wingo:*

(1) the length of the delay between the time the defendant was first arrested or formally charged and the time he was brought to trial;

(2) the reason for the delay;

(3) whether the defendant asserted his right to a speedy trial during the period of delay; and

(4) whether the defendant suffered prejudice as a result of the delay.

*See Cantu v. State*, 253 S.W.3d 273, 280 (Tex.Crim.App. 2008) (citing *Barker v. Wingo,* 407 U.S. 514, 530-32, 92 S.Ct. 2182, 2192-93, 33 L.Ed.2d 101 (1972)).

The *Barker* test is triggered by a delay that is unreasonable enough to be "presumptively prejudicial." *Id*. at 281. There is no set time that triggers the analysis, but the Court of Criminal Appeals has held that a delay of four months is not sufficient while a seventeen-month delay is. *Id*. Once the analysis is triggered, a court must analyze the defendant's speedy-trial claim by first weighing the strength of each of the *Barker* factors, and then balancing the relative weight of each factor in light of "the conduct of both the prosecution and the defendant." *Id.* While the State

6

has the burden to justify the length of delay, the defendant has the burden to prove that he timely asserted the right and that he was prejudiced by the delay. *Id.* at 280. None of the four factors is either a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial. Instead, all of the factors must be considered together along with any other relevant circumstances, and courts must "engage 'in a difficult and sensitive balancing process' in each individual case." *Id.* (quoting *Zamorano*, 84 S.W.3d at 648).

In reviewing a trial court's ruling on a speedy-trial claim, we apply a bifurcated standard of review: "an abuse of discretion standard for the factual components, and a *de novo* standard for the legal components." *Id.* at 282 (citing *Zamorano*, 84 S.W.3d at 648). Review of the individual *Barker* factors necessarily involves factual determinations and legal conclusions, but the balancing test as a whole is purely a legal question. *Id.* We must defer not only to a trial court's resolution of disputed facts, but also to the trial court's right to draw reasonable inferences from those facts, and we view the evidence in the light most favorable to the trial court's ultimate ruling. *Id.* (citing *Kelly v. State*, 163 S.W. 3d 722, 726 (Tex.Crim.App. 2005)). In conducting this review, we are cognizant that in assessing the evidence at a speedy-trial hearing, the trial court is free to completely disregard or disbelieve a witness's testimony based on credibility and demeanor evaluations, even if that testimony is uncontroverted, so long as there is a reasonable and articulable basis for doing so. *Id.*

**Analysis**

*The Length of the Delay Weighs Heavily in Appellant's Favor*

The parties agree that the relevant period of delay began in March 2008, after Appellant was first served with the warrant on the sexual assault charge, and ended in December 2014, when

7

Appellant entered his guilty plea, thereby amounting to a total delay of almost seven years. The State concedes that this almost-seven year delay was sufficiently long to be presumptively prejudicial and to thereby trigger a *Barker* analysis. *See Dragoo v. State*, 96 S.W.3d 308, 314 (Tex.Crim.App. 2003) (3-½ year delay sufficient to trigger *Barker* analysis); *see also Doggett v. United States*, 505 U.S. 647, 652 n.1, 112 S.Ct. 2686, 2691 n.1, 120 L.Ed.2d 520 (1992) (delays approaching one year are "unreasonable enough to trigger the *Barker* enquiry"). Because the delay in this case was more than sufficient to trigger a judicial examination of the claim, this factor—in and of itself—weighs heavily against the State. *See Zamorano*, 84 S.W.3d at 649 (finding that a delay of almost four years was sufficiently long to weigh heavily in the defendant's favor, noting "the longer the delay beyond that which is ordinary, the more prejudicial that delay is to the defendant").

### The State's Failure to Provide a Reason for the Delay Weighs in Appellant's Favor

Under *Barker* "different weights should be assigned to different reasons" for the delay. *State v. Munoz*, 991 S.W.2d 818, 822 (Tex.Crim.App. 1999) (citing *Barker* 407 U.S. at 531, 92 S.Ct. at 2192). Thus, if it appears that the State's delay was the result of deliberate dilatory tactics, this should weigh heavily against the State. *Id.* However, a more "neutral reason" for the delay, such as negligence or overcrowded dockets should be weighed less heavily against the State. *Id.* And, a valid reason, one that justifies the delay, should not be weighed against the State at all. *Id.*

The State acknowledges that it failed to present any reason for the delay between "Appellant's March 2008 indictment and his December 2014 guilty plea," and the record is devoid of any evidence of the reasons for the State's delay—whether it stemmed from deliberately

8

dilatory tactics, from simple negligence, or from a valid reason. When the State offers no reason for the delay, this factor will weigh in favor of a finding of a violation of the right to a speedy trial. *See Dragoo*, 96 S.W. 3d at 314. However, as the Court in *Dragoo* noted, the failure to offer any reason to justify the delay will not necessarily weigh *heavily* in favor of such a finding. *Id.* Instead, when no reason is offered, we may presume that the reason lies somewhere between a deliberate delay and a valid reason that would justify the delay. *Id.* Accordingly, because the record provides no indication of the reasons for the State's delay, we find that this factor weighs slightly in Appellant's favor.

### Appellant's Failure to Assert his Speedy-Trial Right Weighs Heavily in the State's Favor

The next factor is whether Appellant affirmatively sought a speedy trial during the period of delay, and the timing of any such request. In this regard, Appellant correctly points out that a defendant has no duty to bring himself to trial, because that is the State's duty. *Cantu*, 253 S.W.3d at 282 (citing *Barker*, 407 U.S. at 527-28). A defendant, however, does have the responsibility to assert his right to a speedy trial. *Id.*; *see also Barker*, 407 U.S. at 532 (although a defendant's failure to seek a speedy trial does not amount to a waiver of that right, failure to seek a speedy trial will make it difficult to prevail on a speedy trial claim). Thus, a defendant's failure to make a timely demand for a speedy trial serves as a strong indication that the defendant really did not want a speedy trial and was not prejudiced by not having one. *Shaw v. State*, 117 S.W.3d 883, 890 (Tex.Crim.App. 2003). Further, because a court may presume that a defendant who truly wished for a speedy trial would have acted to assert his speedy-trial right as soon as possible, the defendant's "inaction weighs more heavily against a violation the longer the delay becomes." *Dragoo*, 96 S.W.3d at 314. Moreover, when a defendant files for a dismissal *before* requesting a

9

speedy trial, this will generally weaken a speedy-trial claim because it shows that the defendant desired to have "no trial instead of a speedy one." *Cantu*, 253 S.W.3d at 283. Accordingly, whether the defendant asserted his speedy-trial right in a timely manner is entitled to "strong evidentiary weight in determining whether the defendant is being deprived of the right." *Id*.

In the present case, the delays can be categorized into two separate timeframes. The first is the approximate 69-month period starting when Appellant was initially served with the arrest warrant in March 2008 while he was still in prison and unrepresented by counsel and ending in December 2013 after he was released from prison and was appointed counsel. The second is the subsequent one-year period after Appellant was appointed counsel and the filing of his motion for speedy trial and motion to dismiss one year later in December 2014.[4]

Appellant seeks to focus our attention solely on the 69-month period of delay while he was incarcerated, pointing out that the prejudice to his case occurred primarily during this period of time while he was in prison and lacked the assistance of counsel. Appellant contends that this was the critical time when his case could have been properly investigated and witnesses could have been contacted, arguing that he effectively lost his ability to gather evidence to support his alibi defense during that time. Appellant further contends that because he was without counsel during that critical period of time, he was hindered in his ability to assert his assert his speedy-trial right, since "[a]n indigent defendant in the penitentiary is not exactly in a position to understand, much less assert his right to a constitutional remedy."

We agree with Appellant that a defendant who is incarcerated in prison on another offense,

---

[4] The parties agree that the period between the commission of the crime in 2004 and the DNA match in November 2007, when Appellant was first implicated in the offense, should not be counted in analyzing whether Appellant's speedy-trial right was violated, and that the relevant time periods began in March 2008 when the first arrest warrant was served.

without counsel, is undoubtedly at a disadvantage in terms of asserting his right to a speedy trial, when compared to a defendant who is represented by counsel. *Cf. Dragoo*, 96 S.W.3d at 314-15 (incarcerated defendant's failure to assert his speedy-trial right for 3-½ years until just before trial, despite being represented by counsel during that time, weighed heavily against defendant). However, we cannot automatically assume that merely because Appellant was in prison and had not yet been appointed counsel, that he was unaware of his right to a speedy trial, or that he was otherwise unaware that he could have requested a trial date by either contacting the court or the district attorney's office, despite his pro se status. *See Anderson v. State*, No. 06-06-00126-CR, 2007 WL 4334658, at *5 n.2 (Tex.App. – Texarkana Dec. 13, 2007, no pet.) (mem. op, not designated for publication) (disagreeing with appellant that the failure to assert the right to a speedy trial does not weigh against an unrepresented defendant). To the contrary, a defendant's "motivation" in failing to seek a prompt trial is clearly relevant to a speedy trial analysis. *Phillips v. State*, 650 S.W.2d 396, 401 (Tex.Crim.App. 1983). Thus, when a defendant fails to assert his speedy-trial right, despite being admittedly aware of the charges pending against him, it is the defendant's burden to provide cogent reasons explaining why he did not make any effort to assert his speedy-trial right in a timely manner, since the failure to do so "supports an inference that the defendant does not really want a trial, he wants only a dismissal." *See, e.g., Cantu*, 253 S.W.3d at 283 (citing *Barker*, 407 U.S. at 534-36).

Although Appellant acknowledges that he was aware of the sexual assault charges pending against him as early as March 2008, Appellant did not provide any reasons to the trial court for his failure to assert his speedy-trial right while he was incarcerated. Without any such evidence, it is impossible to discern whether Appellant deliberately failed to assert his speedy-trial right while in

11

prison as part of a strategic decision to avoid a trial rather than receive a speedy one, or conversely, whether he was simply unaware that he had the right to do so. Appellant's failure to provide any explanation supports an inference that he did not necessarily want a trial during the 69 months that elapsed after he was served with the arrest warrant in March 2008 and his release from prison in December 2013.

Moreover, this inference is strengthened by the fact that Appellant allowed yet another year to pass after his release from prison in December 2013 before he asserted his speedy-trial right, despite being represented by counsel. And, during that year, Appellant not only failed to request a speedy trial, but also failed to object to the State's request for a continuance of the original July 2014 trial date and failed to request that the trial court reset the case for trial until December 2014, when he simultaneously filed a motion for speedy trial and a motion to dismiss based on the alleged speedy-trial violations. In almost identical circumstances, the Waco Court of Appeals has concluded that a defendant's right to a speedy trial was not violated. *See Whitfield v. State*, 137 S.W.3d 687, 691 (Tex.App. – Waco 2004, no pet.) (right to speedy trial not violated where the defendant failed to assert his speedy-trial right for 300 days while in prison on another offense, failed to assert his right for an additional four months after his release, and failed to object to State's motion for continuance of trial date).

Further, we find it significant that Appellant does not contend that his attorney was ineffective in failing to assert his speedy-trial right during the year that he represented Appellant. From this, we must therefore presume that Appellant's failure to assert his speedy-trial right was motivated by his desire to obtain a dismissal of the charges rather than a desire to actually receive a speedy trial. *See Dragoo*, 96 S.W.3d at 314-15 (concluding that the defendant's failure to

12

challenge the competency of his attorney, who did not move for a speedy trial for 3-½ years, was a factor in determining that the defendant failed to timely assert his speedy-trial right). Accordingly, we conclude that Appellant's failure to assert his speedy-trial right for almost seven years after being informed of the charges against him, despite being represented by counsel during at least one of those years, weighs heavily in favor of the State.

### *Appellant's Failure to Establish Prejudice Weighs against Appellant*

The *Barker* prejudice factor must be assessed in light of the interests the speedy-trial right was intended to protect. S*ee Barker*, 407 U.S. at 532, 92 S.Ct. at 2193. A defendant's speedy trial right protects three interests: "freedom from oppressive pretrial incarceration, mitigation of the anxiety and concern accompanying public accusation, and avoidance of impairment to the accused's defense." *Cantu*, 253 S.W.3d at 280; *see Barker*, 407 U.S. at 532, 92 S.Ct. at 2193. In general, the third interest is the most serious because the inability of a defendant to adequately prepare his case skews the fairness of the entire system. *Barker*, 407 U.S. at 532, 92 S.Ct. at 2193; *see also Dragoo*, 96 S.W.3d at 315. Further, in cases in which a defendant is incarcerated on an unrelated offense during the period of delay, the first two factors take on even less importance, and the third prejudice factor becomes of primary concern. *Dragoo*, 96 S.W.3d at 315 (where defendant was in prison during much of the delay, the court was "mainly concerned with whether or not [his] ability to defend himself was prejudiced by the delay") (citing *McCarty v. State*, 498 S.W.2d 212, 218 (Tex.Crim.App. 1973)); *see Bailey v. State*, 885 S.W.2d 193, 202 (Tex.App. – Dallas 1994, pet. ref'd) (concerns about "oppressive pretrial incarceration" do not apply while the defendant is confined for other crimes and instead the focus must be on the issue of prejudice). Moreover, Appellant did not argue or present any evidence in the trial court that he

13

suffered an any undue concern or anxiety with regard to the sexual assault charge that was pending against him while he was in prison on the unrelated drug offense, nor did he argue or present any evidence that he suffered any oppressive pretrial incarceration as the result of the delay that occurred after he was released from prison. Instead, Appellant focused exclusively on whether he was prejudiced by the delays in terms of being able to adequately prepare his defense. Our focus is therefore exclusively on the prejudice issue. *See Shaw*, 117 S.W.3d at 889 (appellate court is constrained to reviewing a trial court's ruling on a motion to dismiss in light of the arguments, information, and evidence that was available to the trial court at the time it ruled).

*The Presumption of Prejudice Arising from the State's Lengthy Delay*
*was Extenuated by Appellant's Acquiescence in the Delay*

A defendant's burden of demonstrating prejudice does not require him to demonstrate "actual prejudice," and instead the defendant need only make a prima facie showing of prejudice. *Munoz*, 991 S.W.2d at 826 (citing *Harris*, 489 S.W.2d at 308). When a defendant makes a prima facie showing of prejudice, the burden shifts to the State to prove that the defendant "suffered no serious prejudice beyond that which ensued from the ordinary and inevitable delay.'" *Id.* (quoting *Ex parte McKenzie*, 491 S.W.2d 122, 123 (Tex.Crim.App. 1973)). However, in some instances, a delay in bringing a criminal case to trial may be so excessive that it may be considered "presumptively prejudicial," thereby absolving the defendant from the initial burden of demonstrating prejudice. *See Gonzales v. State*, 435 S.W.3d 801, 813-15 (Tex.Crim.App. 2014). In such a case, it is the State's burden to "persuasively rebut" the presumption of prejudice by establishing either that no evidence was lost or impaired during the time of the delay, or alternatively, by "extenuation," or in other words, by establishing that the defendant acquiesced in the delay. *Id.* at 814-15.

14

In the present case, there is no doubt that the almost seven-year delay in bringing Appellant's case to trial was excessive and therefore presumptively prejudicial to Appellant. *See, e.g., Gonzales,* 435 S.W.3d at 809 (six-year delay raised presumption of prejudice); *Dragoo*, 96 S.W.3d at 315 (3-1/2 year delay between defendant's arrest and his trial was "patently excessive" and "presumptively prejudicial"); *Zamorano*, 84 S.W.3d at 654 (four-year delay between arrest and plea was presumptively prejudicial). However, we conclude that any presumption of prejudice was extenuated by Appellant's "longtime acquiescence in the delay," in light of Appellant's failure to assert his speedy-trial right either during the 69-month period of time he was in prison or the 12 months that followed after he was released from prison and obtained counsel. *See Dragoo*, 96 S.W.3d at 315 (defendant acquiesced in the three and one-half year delay in bringing matter to trial where he failed to raise his speedy-trial right in a timely manner); *cf. Gonzales,* 435 S.W.3d at 815 (defendant did not acquiesce in six-year delay in bringing matter to trial where defendant timely asserted his right to a speedy trial upon his initial arrest); *Zamorano,* 84 S.W.3d at 654-55 (defendant did not acquiesce in four-year delay where, despite initial delay in asserting his speedy-trial right, he thereafter repeatedly asserted his right during the remaining period of delay). As such, we must analyze the facts in the present case to determine whether Appellant established a prima facie case of prejudice in the trial court.

*Appellant did not Establish a Prima Facie Case of Prejudice*

Appellant argues that the almost seven-year delay in bringing his case to trial caused him prejudice solely due to the unavailability of witnesses, asserting that the prejudice was "self-evident" as "[a]ny witnesses from 2004 were unlikely to be found" after the passage of so much time, thereby impacting his ability to prepare his defense. As the State points out, however,

in order to make a prima facie showing of prejudice based on "missing" witnesses, a defendant must demonstrate that: (1) the witnesses were in fact unavailable at the time of trial; (2) the witnesses' testimony would have been relevant and material to the defendant's case; and (3) the defendant exercised due diligence in an attempt to locate the witnesses. *See Clarke v. State,* 928 S.W.2d 709, 716 (Tex.App. – Fort Worth 1996, pet. ref'd); *see also Harris v. State*, 489 S.W.2d 303, 308 (Tex.Crim.App. 1973).

The only evidence that Appellant presented in the trial court regarding the "missing" witnesses came from the investigator who testified that the only witnesses he attempted to contact were former employees of the two bars where Appellant claims he was on the night of the offense. Although Appellant's pleadings contain little or no detail regarding what he believed those witnesses would testify to if located, we assume that Appellant believed these employees would have corroborated his alibi testimony that he was at one of the bars when the offense took place.

However, as the State points out, while Appellant's investigator testified that he had difficulty contacting these witnesses, he did not establish that the witnesses were unavailable. Instead, the investigator's testimony indicated that he was able to obtain information regarding these potential witnesses, but that he was unable to contact them for reasons not entirely clear from the record. And, as the State also points out, Appellant's investigator never spoke with the victim or any of the other witnesses listed in the police report, despite the State's assertion that these witnesses were all still "alive" and therefore available to testify at trial.

We agree with the State that Appellant failed to demonstrate that he exercised due diligence in contacting potentially exculpatory witnesses, or that the witnesses he sought to contact were truly unavailable for trial. *See Washington v. State*, No. 02-14-00454-CR, 2016 WL

16

4538566, at *11 (Tex.App. – Fort Worth 2016, no pet.) (not designated for publication) (defendant failed to establish a prima facie case of prejudice where defendant did not establish that he exercised due diligence in locating witnesses or that the witnesses were unavailable).[5] We therefore conclude that Appellant has failed to make a prima facie showing of prejudice, and that this factor weighs in favor of the State.

### Balancing the Barker Factors

In balancing the Barker Factors, we recognize that the unusually lengthy delay in this case clearly weighs heavily in Appellant's favor and against the State. Further, the State's failure to provide any explanation for this lengthy delay also weighs slightly in favor of Appellant since there is no evidence that the State's inaction in prosecuting Appellant arose from any deliberately dilatory tactics. However, we find it highly significant that Appellant admittedly became aware of the charges against him in March 2008, yet failed to assert his speedy-trial right for over seven years, despite being represented by counsel for at least one year during this period of delay, clearly indicating that he acquiesced in the delay. Further, we find it significant that Appellant acquiesced in the State's request for a continuance, and did not seek to assert his speedy-trial right until the same day he moved for dismissal, thereby creating an inference that Appellant was seeking a dismissal of his case rather than a speedy trial. And finally, we find it significant that Appellant failed to make a prima facie showing of prejudice based on the unavailability of witnesses, and further failed to assert any other grounds for concluding that he had been prejudiced by the State's delay in bringing his case to trial. Accordingly, on balance, we conclude that the

---

[5] We further note that although Appellant's investigator testified at the hearing that he attempted to obtain video evidence in Appellant's case from one of the bars that Appellant visited on the night of the offense, Appellant does not claim or show that the investigator's inability to obtain such evidence resulted from the State's delay in prosecuting him or that it somehow prejudiced his case.

17

trial court properly determined that Appellant failed to establish that his right to a speedy trial was violated. Appellant's sole issue on appeal is overruled.

## CONCLUSION

The trial court's judgment is affirmed.


                                        STEVEN L. HUGHES, Justice

December 28, 2016

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)